Pedro R. RIOPTA and Peter
Riopta, Plaintiffs,

v.

AMRESCO RESIDENTIAL
MORTGAGE CORPORATION,
Defendant.

and

Amresco Residential Mortgage
Corporation, Third-party
Plaintiff,

v.

First Hawaii Title Corporation; Toni M.
Moore; Creative Mortgage; and Shel-
ly L. Cox, Third-party Defendants.

No. Civ. 98–558 ACK.

United States District Court,
D. Hawaii.

Aug. 4, 1999.

Gary Victor Dubin, Honolulu, HI, John Harris Paer, Honolulu, HI, Terry L. Day, Honolulu, HI, for Pedro R. Riopta, Peter Riopta, plaintiffs.

Gary Y. Okuda, Leu & Okuda, Honolulu, HI, for Amresco Residential Mortgage Corporation, defendant.

Derek K. Tomita, Hirai Lum & Tomita, Honolulu, HI, for First Hawaii Title Corporation, Toni M. Moore, third–party defendants.

Roger S. Moseley, Case Bigelow & Lombardi, Honolulu, HI, for Creative Mortgage, Shelly L. Cox, third–party defendants.

Neil F. Hulbert, Alston Hunt Floyd & Ing, Honolulu, HI, for Chicago Title Insurance Company, third–party defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

On June 30, 1998, Plaintiffs Pedro R. Riopta and Peter Riopta ("Plaintiffs") filed the instant case against Defendant Amresco Residential Mortgages Corporation ("Amresco") claiming violations of the Truth In Lending Act ("TILA"). On March 30, 1999, Amresco filed a third-party complaint against First Hawaii Title Corporation ("First Hawaii") and its escrow agent Toni Moore ("Moore"), as well as against Creative Mortgage and its agent Shelly Cox ("Cox"). It is undisputed that Plaintiffs did not receive a properly dated Notice of Right to Cancel, and all parties now agree that Plaintiffs should be entitled to rescind the mortgage. However, the parties vigorously dispute whether Plaintiffs should be required to return the principal of the mortgage to Amresco, as well as whether Plaintiffs are entitled to recover damages.

This case stems from the following facts. Plaintiffs owned the subject property located at 4781 Pohina Street in Lihue, Hawaii. Plaintiffs had previously borrowed money from Pioneer Federal Savings Bank ("Pioneer") and secured the loan with a mortgage on the property. However, Plaintiffs failed to make payments and Pioneer instituted a foreclosure action in state court on October 24, 1996. On January 22, 1997, the state court granted Pioneer's motion for summary judgment and issued an interlocutory decree of foreclosure. Plaintiffs sought to stop the foreclosure by refinancing their loan with Pioneer.

Plaintiffs enlisted the aid of Cox, a licensed mortgage broker for Creative Mortgage, to help them obtain refinancing to stop the foreclosure. By October 6, 1997, Cox had obtained approval of a $100,000 mortgage loan for Plaintiffs through Amresco, and escrow was opened at First Hawaii through Moore. The closing was postponed twice, including from October 9, 1997 to October 12, 1997. The closing was ultimately held on Sunday, October 12, 1997 at the Lihue, Hawaii airport. It is undisputed that the Notice of Right to Cancel which was signed on October 12, 1997 was improperly dated and notarized as October 9, 1997. On October 13, 1997, Plaintiffs received a faxed copy of a Notice of Right to Cancel that listed the date of the transaction as October 9, 1997 and provided that notice of cancellation must be received by October 14, 1997. Plaintiffs airmailed the signed document on October 15, 1997. During the closing, Plaintiffs were also charged $1,720 for forced place insurance and were also charged $26.04 extra for the appraisal used in connection with the loan.

Shortly thereafter, Plaintiffs failed to make payments on their mortgage. Plaintiffs sent their rescission letter to Amresco

on March 31, 1998. Amresco subsequently instituted foreclosure proceedings in state court on April 21, 1998. Plaintiffs filed the instant motion for summary judgment on May 18, 1999. Amresco filed its opposition on June 23, 1999, as did First Hawaii and Moore. Creative Mortgage and Cox filed an opposition on June 24, 1999. On June 30, 1999, Plaintiffs filed their reply. The Court held a hearing on Plaintiffs' motion on July 12, 1999.

## STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

## DISCUSSION

In the instant case, Amresco concedes that it technically violated TILA because the Notice of Right to Cancel was not properly dated and did not properly inform Plaintiffs of their right to rescind the

mortgage. Both Moore and Cox have admitted that the disclosure documents were actually signed on October 12, 1997, not on October 9, 1997 as the documents otherwise indicate. *See* Cox Dep. at 47; Moore Dep. at 63, 66. Thus, the mortgage was signed and witnessed on October 12, 1997 but notarized by Moore as if it was signed on October 9, 1997. The parties generally agree that Plaintiffs should be entitled to rescission.

However, other factual disputes remain. Specifically, Amresco disputes Plaintiffs' claim that they received only one copy of the Notice of Right to Cancel and that such copy was blank. *See* Amresco's Separate Concise Statement, June 23, 1999, at ¶ 4. Moreover, although Amresco agrees that Plaintiffs were charged $1,727 for forced place insurance, it disputes Plaintiffs' claims that its agents knew that Plaintiffs had existing insurance at the time the closing occurred. Amresco agrees that Plaintiffs were promised a refund of $26.04 regarding the appraisal and that this refund was not paid, but disputes that it was obligated to refund the $1,727 paid for forced place insurance. *See id.* at ¶ 10.

## I PLAINTIFFS ARE ENTITLED TO RESCIND THE MORTGAGE BECAUSE AMRESCO FAILED TO COMPLY WITH TILA REGULATIONS.

### A. SUMMARY JUDGMENT IS APPROPRIATE ON THE CLAIM THAT AMRESCO FAILED TO PROVIDE A PROPERLY DATED NOTICE OF RIGHT TO CANCEL.

■ The Court finds that Plaintiffs should be allowed to conditionally rescind the mortgage, as explained *infra*, because Amresco failed to comply with the applicable TILA regulations.[1] TILA requires creditors to disclose in a clear and conspicuous manner certain key terms and costs in credit transactions. *See* 15 U.S.C. § 1635. In order to further TILA's purpose of protecting consumers, courts have held that "[e]ven technical or minor violations . . . impose liability on the creditor." *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir.1989) (citations omitted). Thus, failure to deliver the required disclosure notices in a timely manner or in the proper form extends a borrower's rescission period from three days to three years. *See* 12 C.F.R. § 226.23(a)(3) (1994).

In the instant case, Amresco admits that the Notice of Right to Cancel was improperly dated and that this constitutes a technical violation of TILA. The Ninth Circuit has explained that even technical or minor violations of TILA impose liability on the creditor. *See, e.g., Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir.1989) (incorrect expiration date that was prior to actual consummation of loan); *Semar v. Platte Valley Fed. Sav. & Loan Assoc.*, 791 F.2d 699, 704 (9th Cir.1986) (expiration date omitted). Accordingly, the Court finds that this TILA violation requires rescission because Plaintiffs submitted a timely notice of rescission on March 31, 1998.

### B. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR OTHER CLAIMS THAT AMRESCO VIOLATED TILA BY OVERCHARGING PLAINTIFFS.

■ Plaintiffs also assert that they are entitled to rescission for other TILA viola-

1. The Court notes that counsel for Amresco and for Moore and First Hawaii concede that Plaintiffs should be entitled to rescind the loan based on the TILA violation. Only Counsel for Cox and Creative Mortgage disputes this outcome, arguing without any citation to case authority that Plaintiffs are not entitled to rescission because they were not consumers within the meaning of TILA because they, allegedly, never intended to repay the loan.

The Court finds this argument unavailing, and observes that courts frequently emphasize that even unsympathetic plaintiffs are entitled to rescission for TILA violations. *See, e.g., Semar v. Platte Valley Fed. Sav. & Loan*, 791 F.2d 699, 704 (9th Cir.1986) (district court correctly concluded that rescission was appropriate despite the fact that the case involved unsympathetic plaintiffs).

tions because they were overcharged. However, the Court finds that summary judgment is not appropriate on these grounds. First, Plaintiffs claim that they were erroneously charged $1,727 for forced place insurance despite the fact that they already had property insurance, and that consequently the amount financed, finance charge, and annual percentage rate are incorrect. Cox has testified that she learned that insurance was in existence shortly after the closing, and that she informed Amresco of this fact. However, Amresco disputes that either it or its agents knew about existing insurance at the time of closing. Therefore, summary judgment is not appropriate on this ground.

Second, Plaintiffs claim that summary judgment is appropriate because Amresco overcharged Plaintiffs $26.04 for the appraisal. The Court disagrees for two reasons. First, regulations explicitly provide: "After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the finance charge and other disclosures affected by the finance charge ... shall be considered accurate ... if the disclosed finance charge: (i) is understated by no more than $35...." 12 C.F.R. § 226.23(h)(2). Therefore, the $26.04 overcharge does not affect the accuracy of the disclosed finance charge. Second, the Court finds that this overcharge only occurred as a result of subsequent events because Defendants were relying on an oral estimate of the appraisal fee, which turned out to be too high and the closing occurred under rushed circumstances to accommodate Plaintiffs' emergency situation. Consequently, such inaccuracy is not a violation of TILA. *See* 12 C.F.R. § 226.17(e) ("If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation...."); *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 899 (3rd Cir.1990) ($13 filing fee that was subsequently rendered unnecessary

after disclosures were properly made did not constitute an improper finance charge).

**C. SUMMARY JUDGMENT IS NOT APPROPRIATE ON PLAINTIFFS' CLAIMS THAT AMRESCO VIOLATED TILA BY PROVIDING ONLY ONE COPY OF THE NOTICE OF RIGHT TO CANCEL.**

Plaintiffs argue that summary judgment is appropriate because they were given only one copy of the Notice of Right to Cancel. Because Amresco disputes this claim, *see* Amresco's Separate Concise Statement, June 23, 1999, at ¶ 3, the Court finds that summary judgment is not appropriate on this particular issue.

**D. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS THAT AMRESCO VIOLATED TILA BY REFUSING TO RELEASE ITS SECURITY INTEREST UPON RECEIVING THEIR NOTICE OF RESCISSION.**

The Court finds as a matter of law that Amresco was not required to release its security interest in the property prior to Plaintiffs' tendering or offering to tender repayment of the principal. In reaching this decision, the Court emphasizes that the majority of cases addressing this issue, including cases in the Ninth Circuit, hold that a creditor is not required to release its security interest upon receiving a notice of rescission unless the obligor tenders or offers to tender repayment. *See, e.g., Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir.1974) (holding that district court can condition right of rescission on repayment of principal to avoid the harsh penalty that would occur when the creditor is reduced to the status of an unsecured creditor and the debtors are judgment proof); *Bustamante v. First Fed. Sav. & Loan Assoc.*, 619 F.2d 360, 365 (5th Cir. 1980) (holding that creditor's TILA obligations were not triggered because obligor failed to tender repayment); *Abel v.*

*Knickerbocker Realty Co.,* 846 F.Supp. 445, 450 (D.Md.1994) (noting that the weight of authority "that the Court should condition the obligor's right to rescind upon its tender to the lender of the remaining principal"); *Mayfield v. Vanguard Sav. & Loan Assoc.,* 710 F.Supp. 143 (E.D.Pa.1989) (refusing to follow *Gill v. Mid–Penn Consumer Discount Co.* because "in the majority of prior cases the courts have either explicitly held that an obligor must tender or offer to tender the proceeds of the consumer transaction before finding a forfeiture"). *But see Gill v. Mid–Penn Consumer Discount Co.,* 671 F.Supp. 1021, 1026 (E.D.Pa.1987) (refusing to require obligor who was charged double interest to repay outstanding principal balance of $948.71); *French v. Wilson,* 446 F.Supp. 216, 220 (D.R.I.1978). In the instant case, it is undisputed that Plaintiffs did not tender or offer to tender repayment of the principal when they sent their notice of rescission.

■ The Court is not persuaded that the cases cited by Plaintiffs require a different outcome. In addition to citing *Gill,* Plaintiffs cite *Sosa v. Fite,* 498 F.2d 114 (5th Cir.1974) and *French v. Wilson,* 446 F.Supp. 216 (D.R.I.1978). *Sosa* is frequently distinguished, including by the Fifth Circuit's subsequent decision in *Bustamante v. First Fed. Sav. & Loan Assoc.,* 619 F.2d 360, 365 (5th Cir.1980), because the obligors in *Sosa* expressly offered to make a proper tender, which is not the case here. The Court recognizes that the *French* and *Gill* decisions reached outcomes contrary to the instant case, but the Court finds that they are not controlling authority and their logic is not persuasive. Accordingly, the Court orders that Plaintiffs' right to rescind the mortgage is conditioned upon their tender of the principal amount to Amresco, as will be more fully explained below.[2]

## II APPLICABILITY OF H.R.S. § 480–2 GOVERNING UNFAIR COMPETITION AND DECEPTIVE ACTS OR PRACTICES.

### A. A TILA VIOLATION DOES NOT CONSTITUTE A PER SE VIOLATION OF H.R.S. § 480–2.

■ Plaintiffs argue that Amresco's failure to provide a properly dated Notice of Right to Cancel, which the Court has already determined is a violation of TILA, constitutes a per se violation of H.R.S. § 480–2, which prohibits unfair methods of competition and unfair or deceptive commercial acts ·or practices. Conversely, Amresco argues that the technical violation of TILA does not automatically result in a violation of H.R.S. § 480–2, and that it has not in fact violated state law because it never authorized any party to erroneously date the Notice of Right to Cancel and that it lacked any actual notice of this mistake.

The Court recognizes that there is no Hawaii state court authority specifically addressing whether a violation of the federal TILA constitutes a per se violation of H.R.S. § 480–2, which provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." H.R.S. § 480–2(a). In an unpublished Order filed on October 17, 1991, this Court held that violations of TILA were violations of H.R.S. § 480–2. *See Burnett v. Ala Moana Pawn Shop,* Civ. No. 90–257, Order filed Oct. 17, 1991, at 31. However, the Court also ruled in the alternative that defendant's practice of charging 20% interest per month without disclosure was an unfair trade practice in violation of H.R.S. § 480–2. *See id.* at 32. Without addressing whether a TILA violation constitutes a per se violation of H.R.S. § 480–2, the Ninth Circuit affirmed the Court's alternative ruling that defendant's trade practices constituted an unfair trade practice be-

---

**2.** The Court recognizes that one violation of TILA carries the same degree of liability as multiple violations in a single transaction. *See* 15 U.S.C. § 1640(g).

cause they "created the prohibited 'likelihood of confusion' by soliciting borrowers while disguising loans as sales." *Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir.1993). Given the Ninth Circuit's failure to address the Court's ruling on the per se violation argument, and given the unique facts of that case, the Court finds it appropriate to consider anew the question posed here. Therefore, the Court will look to other sources for guidance.[3]

First, the Court contrasts the scope and application of TILA with H.R.S. § 480–2. As previously discussed, TILA requires exact adherence and minor or technical violations, no matter how inadvertent, automatically allow obligors to invoke various remedies. In essence, TILA embodies a strict liability approach that ignores intent and focuses solely on whether any statutory requirement was violated. Conversely, H.R.S. § 480–2 requires courts to examine the nature of a defendant's conduct to determine if it is either unfair or deceptive. Thus, rather than adopting the strict liability approach embodied in TILA, the emphasis is on the reprehensibility of defendant's conduct. This interpretation is consistent with rulings by Hawaii courts that state that the Hawaii consumer protection statute encompasses broad, sweeping terms. *See Island Tobacco Co. v. R.J. Reynolds Tobacco Co.*, 63 Haw. 289, 300, 627 P.2d 260 (stating that the statute "outlaws unfair methods of competition and unfair or deceptive trade practices in sweeping terms"); *Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 616, 607 P.2d 1304 (1980) (It "was constructed in broad language in order to constitute a flexible tool ..."). Thus, the differing applications of these two statutes suggest that a violation of TILA does not constitute a per se violation of H.R.S. § 480–2.

Second, the Court observes that the two statutes embody differing standards. Any violation of TILA, no matter how technical, is justification for an obligor to rescind the loan transaction provided that such rescission is timely exercised. *See* 15 U.S.C. § 1635(f) (obligor's right to rescind expires three years from the date of the loan transaction). Thus, the terms of the statute expressly provide that the contracts are voidable. Conversely, H.R.S. § 480–12 provides that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity." H.R.S. § 480–12. Thus, the fact that the Hawaii legislature saw fit to make all deceptive or unfair contracts void, as opposed to using TILA's voidable standard, is further evidence that the Court should not interpret a TILA violation as a per se violation of H.R.S. § 480–2.

Third, the Court observes that the degree of deference to be shown to the interpretation of comparable federal statutes has been lessened. Initially, H.R.S. § 480–3 provided: "It is the intent of the legislature that in construing section 480–2 the courts will be guided by the interpretations given by the Federal Trade Commission and the federal courts to section 5(a)(1) of the [FTCA]." *Rosa*, 3 Haw.App. at 426 n. 7, 651 P.2d 1228. This statute was amended twice. With regard to the most recent amendments, the legislature directed courts to rely more on the developing Hawaii case law. *See* Senate Standing Committee Report No. 2329 (1988).

This decreased attention to federal interpretations in applying H.R.S. § 480–2 undermines the persuasiveness of a competing argument that suggests a violation of TILA is a per se violation of the consumer protection statute. This syllogistic argument goes as follows: given that a

**3.** The Court notes that Plaintiffs cite *Alvaro v. Bank of America*, Bk. No. 95–952; Adv.Pro. No. 96–89 (Bankr.D.Haw. Nov. 20, 1998) to support their argument that a violation of TILA is a per se violation of H.R.S. § 480–2. Reliance on this decision is improper because the parties stipulated to vacate the opinion and to dismiss with prejudice all claims and parties on July 1, 1999. At any rate, the decision does not support Plaintiffs' arguments because the decision specifically concludes that it "does not hold or determine that TILA violations constitute *per se* violations of H.R.S. chapter 480." *See id.* at 68.

violation of TILA constitutes a violation of the FTCA, and given that H.R.S. § 480–2 is virtually a duplication of § 5(a)(1) of the FTCA, it logically follows that a violation of TILA constitutes a per se violation of the Hawaii consumer protection statute. However, in addition to the other reasons discussed above, the fact that the legislature saw fit to downplay the emphasis on federal interpretations of federal law is significant because it suggests that courts should be more inclined to consider circumstances unique to Hawaii.

Fourth and finally, the Court emphasizes that several other state courts with comparable consumer protection statutes that have addressed this issue have reached the same outcome. *See, e.g., Pittman v. Allright Mortgage Co.,* 165 B.R. 586, 589 (Bkrtcy.D.Md.1994) (declining to hold that a technical violation of TILA was a per se violation of the Consumer Protection Act); *Celebrezze v. Fred Godard Ford, Inc.,* 27 Ohio App.3d 301, 303–04, 500 N.E.2d 881 (Ohio App.1985) (despite state statute requiring deference to FTC interpretations, court held that violation of TILA was not a per se violation of consumer sales practices act); *Williams v. Gelt Financial Corp.,* 232 B.R. 629, 642 (Bankr.E.D.Pa.1999) (holding that TILA violation was not a per se violation of consumer protection statute; plaintiff must establish fraudulent conduct or pervasive illegal conduct). *But see Fidler v. Central Co–op. Bank,* 210 B.R. 411, 430 (Bankr.D.Mass.1997) (holding that "[v]iolations of TILA ... constitute 'unfair and deceptive acts or practices' for purposes of [the Massachusetts consumer protection statute]"). Therefore, the Court finds that a technical violation of TILA does not constitute a per se violation of H.R.S. § 480–2.

### B. *AMRESCO'S TILA VIOLATION DOES NOT VIOLATE H.R.S. § 480–2.*

 The Court finds as a matter of law that Amresco's failure to provide a properly dated notice of right to cancel does not violate H.R.S. § 480–2. In interpreting H.R.S. § 480–2, Hawaii courts have held that "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rosa v. Johnston,* 3 Haw.App. 420, 427, 651 P.2d 1228 (1982); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626 (9th Cir.1987). A deceptive practice is defined as "an act causing, as a natural and probable result, a person to do that which he would not otherwise do." *Eastern Star, Inc. v. Union Bldg. Materials Corp.,* 6 Haw.App. 125, 133, 712 P.2d 1148 (1985). "However, ... actual deception need not be shown; the capacity to deceive is sufficient." *Id.*

In the instant case, the Court finds that the technical violation of TILA at issue in the instant case—namely, the failure to provide a properly dated Notice of Right to Cancel—does not qualify as an unfair act or practice. It does not both offend established public policy and constitute an immoral, unethical, oppressive, unscrupulous or substantially injurious practice. In the instant case, it is only an inadvertent, technical error that occurred due to the rushed circumstances resulting from Plaintiffs' pending foreclosure proceeding. Moreover, it also does not qualify as a deceptive act because the mere failure to properly date the notice did not create a likelihood of confusion surrounding Plaintiffs' substantive right to cancel given that the Notice of Right to Cancel expressly provides that the obligor has three days from the date of the transaction to cancel.

### III *REMEDIES:*

### A. *PLAINTIFFS ABILITY TO RESCIND THE MORTGAGE SHOULD BE CONDITIONED ON TENDER OF REPAYMENT BY PLAINTIFFS.*

 The Court finds, in the exercise of its equitable discretion, that it is appropriate to condition rescission of the mortgage on Plaintiffs' tender of repayment. Plaintiffs argue that Amresco failed to act in accordance with TILA by removing the

security interest from the property within twenty days of receiving their notice of rescission. Section 1635(b) provides in part:

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it.... If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

15 U.S.C. § 1635(b). The Ninth Circuit has ruled, and both Plaintiffs and Amresco agree, that the Court may exercise equitable discretion in determining whether to require repayment of the principal. *See* Reply, June 30, 1999, at 7; Amresco's Opposition, June 23, 1999, at 11 (citing *Palmer v. Wilson*); *Palmer v. Wilson*, 502 F.2d 860, 862 (9th Cir.1974) (remanding case for consideration of the propriety of conditioning the grant of rescission on repayment by obligors); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.1976) (holding that district court erred in not conditioning rescission on the tender of the net amounts advanced by the creditors because the TILA violations were not egregious and the equities heavily favored the creditors); *Rowland v. Novus Fin. Corp.*, 949 F.Supp. 1447, 1459 (D.Haw.1996).

Plaintiffs argue that the TILA violations in the instant case were sufficiently egregious to justify allowing Plaintiffs to retain the principal rather than return it to Amresco. In support of this argument, Plaintiffs rely on numerous alleged violations of TILA; however, even if summary judgment in favor of Plaintiffs was appropriate on all these grounds, the Court would still find that these violations would not be so

egregious as to justify permitting Plaintiffs to keep the principal. Plaintiffs also argue in their reply brief that this outcome is justified by public policy because it would discourage lenders from delegating TILA responsibilities to individuals who are not liable under TILA, and it would encourage lenders to adhere to TILA's technical requirements. In addition, Plaintiffs emphasize that this is not a large loan for Amresco (approximately $91,000), but that it is very large for Plaintiffs. Finally, Plaintiffs contend that Amresco's refusal to release its security interest in the property and subsequent state foreclosure suit constituted egregious behavior justifying this proposed remedy.

Upon consideration of the equities in this case, the Court finds that Plaintiffs should not be allowed to retain the principal of the mortgage. Specifically, the Court emphasizes that the closing date was rescheduled for the convenience of the Plaintiffs, and the closing itself occurred under rushed conditions because Cox and Moore were trying to complete the loan transaction prior to completion of the state foreclosure proceeding. Thus, although Amresco is ultimately responsible for the failure to properly date the Notice of Right to Cancel, despite its explicit warnings to its agents, the Court finds that Plaintiffs' immediate need for the mortgage arising from their failure to repay their original mortgage with Pioneer contributed to the circumstances surrounding the TILA violation.[4]

In their reply brief, Plaintiffs also request that they be allowed to repay the principal on a monthly basis, and that Amresco be ordered to finance the repayment obligation upon terms that Plaintiffs can reasonably meet. Plaintiffs argue that they are not in bankruptcy and Amresco would not suffer any forfeiture upon rescission. The Court denies this request. First, the Court points out that Plaintiffs have cited no cases to support this proposition. Second, the Court has already con-

---

4. The Court notes that in *Burnett* it required the plaintiff to repay the $550 loan as a condition of return of his camera, which had been pledged as security for the loan.

cluded that Plaintiffs' right of rescission is conditional upon repayment of the principal. Third, the Court emphasizes that it would not be in the best interests of either party, given their past history, to compel them to enter into another loan transaction in attempting to resolve litigation arising from this case.

Accordingly, the Court grants Plaintiffs ninety (90) days from the date of this Order to repay the principal to Amresco. Defendant Amresco shall not be required to release its security interest in the property until Plaintiffs have actually tendered repayment.

### B. *PLAINTIFFS ARE ENTITLED TO RECOVER TILA STATUTORY DAMAGES, COSTS, AND REASONABLE ATTORNEY'S FEES.*

The Court finds that Plaintiffs are entitled to recover TILA statutory damages pursuant to 15 U.S.C. § 1640. This statutory provision states that:

any creditor who fails to comply with any requirement imposed under [TILA], including any requirement under section 1635 of this title, ... is liable to such person in an amount equal to the sum of—(1) any actual damage sustained by such person as a result of the failure; (2)(A) ... (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000....

15 U.S.C. § 1640(a). Moreover, § 1640(a)(3) provides that persons who are determined to have a right of rescission

**5.** Plaintiffs have requested that this Court either hold a hearing or allow their claims of actual damages to proceed to trial for a determination of their actual damages arising from Amresco's TILA violation. Plaintiffs' briefs and counsel's representations at the summary judgment hearing indicate that, as part of their actual damages, Plaintiffs are seeking to recover under TILA's actual damages provision for emotional distress and for damage by Pedro Riopta involving his coronary bypass. *See* Motion for Summary Judgment, May 18, 1999, at 12 – 13; Reply, June 30, 1999, at 13.

are entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court...." Therefore, because Amresco failed to comply with TILA, the Court finds it is liable to Plaintiffs for statutory damages of $2,000, costs of this action, and reasonable attorney's fees.

### C. *PLAINTIFFS ARE ENTITLED TO RETURN OF ALL FINANCE AND INTEREST CHARGES, AS WELL AS OTHER CLOSING–RELATED COSTS.*

Similarly, because the Court has found rescission appropriate, the Court concludes that Plaintiffs are entitled to recover all finance and interest charges associated with the mortgage. *See* 15 U.S.C. 1635(b) ("When an obligor exercises his right to rescind ..., he is not liable for any finance or other charge...."); *Mayfield v. Vanguard Sav. & Loan Assoc.*, 710 F.Supp. 143, 147 (E.D.Pa.1989). In particular, the Court concludes that Amresco should refund to Plaintiffs the $26.04 overcharge for the appraisal and the $1,727 charge for the forced place insurance, as well as other closing-related costs such as broker's fees and origination fees. Amresco shall be permitted to offset these charges against the principal balance owed by Plaintiffs.

### D. *PLAINTIFFS ARE NOT ENTITLED TO TREBLE DAMAGES UNDER H.R.S. § 480–13.*

Plaintiffs are not entitled to treble damages under H.R.S. § 480–13 because the Court has concluded that no violation of H.R.S. § 480–2 occurred.[5]

However, the Court observes that Plaintiffs have not specifically pleaded these damages, have not submitted evidence to substantiate these claims, and have not submitted authority that they are entitled to recover these types of damages under TILA. If Plaintiffs wish to seek recovery of any further damages, the Court directs Plaintiffs to file an appropriate motion in light of the foregoing.

However, the Court notes that it would appear to be difficult to establish a causal link between Pedro Riopta's heart problems and

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Summary Judgment.

IT IS SO ORDERED.

Amresco's conduct in this matter. Among other things, the Court notes that the Rioptas had been under a great deal of pressure and stress dating back to their failure to timely pay Pioneer and the rushed closing with Amresco, as well as their failure to make any payment on the Amresco mortgage for close to half a year.