11 P.3d 1

HAWAII COMMUNITY FEDERAL
CREDIT UNION, Plaintiff–
Appellee,

v.

Arthur K. KEKA and Shirley A. Keka,
Defendants–Appellants.

No. 22631.

Supreme Court of Hawai'i.

Oct. 17, 2000.

Gary V. Dubin, on the briefs, Honolulu, for the defendants-appellants Arthur K. Keka and Shirley A. Keka.

Matthew G. Jewell and Keith M. Yonamine, (of Ashford & Wriston), on the briefs, Honolulu, for the plaintiff-appellee Hawaii Community Federal Credit Union.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by LEVINSON, J.

The defendants-appellants Arthur K. Keka and Shirley A. Keka (collectively, the Kekas) appealed from the judgment of the circuit court of the third circuit, entered on May 26, 1999, pursuant to a summary judgment order against the Kekas and in favor of the plaintiff-appellee Hawaii Community Federal Credit Union (the Credit Union) with respect to (1) all claims asserted by the Credit Union in its complaint to foreclose mortgage and (2) the Kekas' counterclaims. Pursuant to this court's order, filed on May 30, 2000, the circuit court entered an amended final judgment. On appeal, the Kekas argue that the circuit court erred in: (1) granting summary judgment in favor of the Credit Union, inasmuch as the Credit Union's motion was unsupported by admissible evidence sufficient to establish either a defaulted loan or a past due amount; (2) granting summary judgment in favor of the Credit Union, inasmuch as there were genuine issues of material fact as to the Kekas' liability and the rights asserted in their counterclaims; (3) granting the Credit Union a certification of finality pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) (2000),[1] inasmuch as there were unresolved issues concerning the Kekas' affirmative defenses and counterclaims; (4) failing to allow the Kekas a continuance in order to conduct discovery pursuant to HRCP Rule 56(f) (2000),[2] inasmuch as counsel, who had first appeared for the Kekas at the hearing on the motion for summary judgment, needed additional time to obtain necessary evidence; and (5) failing to enter adequate findings of fact. · We agree with the Kekas that (1) the Credit Union failed to support its motion for summary judgment with admissible evidence of the Kekas' alleged default in the repayment of their loan and (2) genuine issues of material fact precluded summary judgment with respect to the Kekas' counterclaims based on (a) alleged violations of the Truth in Lending Act (15 U.S.C. §§ 1601 through 1692), (b) alleged unfair or deceptive trade practices in violation of Hawai'i Revised Statutes (HRS) ch. 480, and (c) alleged fraudulent misrepresentation.[3] Accordingly, we partially vacate

---

1. HRCP Rule 54(b) provides in relevant part:
 **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

2. HRCP Rule 56(f) provides:
 **When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

3. We need not reach the Kekas' third, fourth, and fifth points of error on appeal because (1) the circuit court's HRCP Rule 54(b) certification was superceded by the circuit court's entry of its amended final judgment on June 14, 2000, which resolved all claims of all parties in the present matter, (2) the Kekas will have an opportunity to conduct discovery on remand, and (3) the circuit court was not required to enter any findings of fact in ruling on the Credit Union's motion summary judgment. *See* HRCP Rule 52(b) (2000) ("Findings of fact and conclusions of law are

the circuit court's amended final judgment, filed on June 14, 2000 in favor of the Credit Union and against the Kekas, and remand the matter to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual History

On June 7, 1994, the Kekas borrowed $65,000.00 from the Credit Union, to be repaid in monthly installments over twenty years with interest at an annual rate of nine percent. The loan was secured by a mortgage on the Kekas' residence. The purpose of the loan was to refinance a previous loan. The Kekas allege that they had a prior agreement with the Credit Union that the interest rate on their loan would be seven and one-fourth percent, but that they were offered a nine percent interest rate at the time of the closing of the transaction on June 7, 1994. They allege that they were "induced" to enter into the transaction by a loan officer of the Credit Union, who represented that it would be "no problem" to change the interest rate at a later time, "when the in house rate changes." They further allege that, one year later, they attempted to have the interest rate on their loan lowered to seven and one-fourth percent, but the same loan officer represented to them that it would be "too much trouble." The Kekas have no finance or business experience and relied on the Credit Union's loan officer when they entered into the transaction. The Kekas allege that, on June 7, 1994, they were "induced" to sign a copy of the "Notice of the Right to Cancel" and "Disclosure Statement" required by the Truth in Lending Act (TILA), but that they did not receive copies of those documents until April 1998. On August 17, 1998, the Kekas attempted to cancel their mortgage loan by sending a letter to the Credit Union, stating:

> I am exercising my right to cancel my mortgage loan with [the Credit Union], pursuant to the 1995 amendments to the Truth in Lending Act and Regulation Z. By operation of Federal Law, the security interest and mortgage note is void automatically upon your receiving of this notice of rescission by way of recoupment.

> The violation committed by your company is the failure to provide the required notice of right to cancel. . . .

### B. Procedural History

On October 5, 1998, the Credit Union filed a complaint to foreclose mortgage against the Kekas, in which it alleged that the Kekas had defaulted on the installment payments prescribed by the loan and owed the Credit Union $59,802.47, in addition to interest and other charges. On November 24, 1998, the Kekas, proceeding pro se, responded with a counterclaim, in which they alleged in relevant part as follows:

> ... Plaintiff's [sic] raise defenses under Title 15 U.S.C. § 1601, Truth in Lending Act (TILA), rescission by way of recoupment, unfair and deceptive practices, and misrepresentation as a counterclaim against the foreclosure action brought by [the Credit Union.]

> ....

> COUNT I

> ....

> Defendant's [sic] negligently misrepresented material facts to the Keka's [sic] which Mr. And Mrs. Keka reasonably relied; and said false statements induced the Keka's [sic] to take a security interest on the Keka's principal dwelling which the Keka's [sic] relied to their substantial detriment and as direct and proximate result have sustained substantial damages.

> COUNT II

> ....

> The loan documents were not presented to Keka's [sic], including but not limited to incompleteness and/or absence of the Disclosure Statement and the Notice of the Right to Cancel and Defendants presented Plaintiff more than 3 years after the 3 day cancellation period, with the intent of and for the purpose of defrauding the Keka's [sic] and as a direct and proximate result of said fraud, Plaintiff has sustained pecuniary general and special damages in an amount of not less than $65,000.

unnecessary on decisions of motions under Rule 12 or 56[.]'").

COUNT III

. . . .

[The Credit Union] has violated Chapter 480, ... Hawaii Revised Statutes, by engaging in unfair and deceptive trade practices and as a direct and proximate result, Plaintiff has sustained substantial pecuniary, general and special damages in an amount not less than $65,000.00 and said sums are being trebled pursuant to Chapter 480. . . .

COUNT IV

. . . .

. Defendants conduct is in direct violation of 15 U.S.C. § 1601, et seq., Regulation Z, 15 U.S.C. § 1635(b), and as a direct and proximate result, Plaintiffs have sustained statutory damages of $1,000.

COUNT V

. . . .

Defendants, and each of them, intentionally and/or negligently caused Plaintiff to sustain severe emotional distress, and as a direct and proximate result, Plaintiff has sustained general and special damages in an amount to be proved at trial.

The Kekas attached affidavits to their counterclaim, asserting, *inter alia*, (1) that they did not receive copies of the "Notice of the Right to Cancel" and "Disclosure Statement" until April 1998, (2) that they were first informed by the Credit Union's loan officer that the interest rate on their loan would be nine percent, instead of seven and one-fourth percent, on June 7, 1994, the day loan documents were signed, which "caught [them] unprepared," and (3) that the Credit Union was mistaken as to the amount owed by the Kekas.

4. 15 U.S.C. § 1635(c) provides:
 **Rebuttable presumption of delivery of required disclosures.** Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

5. HRCP Rule 56(e) provides:
 **Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge,

On January 5, 1999, the Credit Union filed a motion for summary judgment against the Kekas with respect to (1) the relief sought in its complaint of foreclosure and (2) the claims for relief asserted in the Kekas' counterclaim; correlatively, the Credit Union sought HRCP Rule 54(b) certification, *see supra* note 1, and the entry of a final judgment. In support of its motion, the Credit Union attached the affidavit of Charles E. Paranial, who averred that he was an officer of the Credit Union "personally familiar with the payment history of [the Kekas]," that the Kekas were "in default under the terms of the Note and Mortgage for failing to timely make the payments due and owing thereunder," and that the unpaid balance as of December 30, 1998 was as follows:

| | |
|---|---|
| Principal: | $59,802.47 |
| Accrued Interest: | 4,417.81 |
| Accrued Late Charges: | 263.16 |
| Total: | $64,483.44 |

Regarding the Kekas' counterclaim, Paranial attached "true" copies of the "Right to Cancel" and "Truth in Lending Disclosure Statement" forms, signed by the Kekas on June 7, 1994.

On February 9, 1999, still proceeding *pro se*, the Kekas filed a memorandum in opposition to the Credit Union's motion for summary judgment, in which they argued, *inter alia*, (1) that they had a right to rescind their loan and mortgage on the grounds that the Credit Union had committed (a) various violations of TILA and (b) common law "fraud in inducement" and (2) that Paranial's affidavit contained inadmissible hearsay that (a) did not generate a rebuttable presumption of the delivery of the "disclosures" required by 15 U.S.C. § 1635(c)[4] and (b) violated the requirements of HRCP Rule 56(e) (2000),[5] as

shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as other-

construed by this court in *Pacific Concrete Federal Credit Union v. Kauanoe*, 62 Haw. 334, 614 P.2d 936 (1980). The Kekas attached a declaration of Arthur Keka to their memorandum, in which he averred, *inter alia*, (1) that the Credit Union (a) had failed to deliver the notice of right to cancel and disclosure statements required by TILA, (b) "induced" the Kekas to sign copies of the notice of right to cancel and disclosure statement when the loan documents were signed on June 7, 1994, (c) "induced" the Kekas to sign the loan documents providing for a nine percent interest rate, purportedly an "in house" rate, instead of the rate of seven and one-fourth percent, as previously agreed, (2) that the Credit Union's loan officer had represented that it would be "no problem" to change the interest rate applicable to their loan when the "in house" rate decreased, but that the same loan officer had refused the Kekas' request to change the rate a year later, stating that it would be "too much trouble," and (3) that the Kekas had no finance and business experience and had relied on the Credit Union's loan officer's advice. The Credit Union filed no reply to the Kekas' memorandum.

The circuit court heard the Credit Union's motion for summary judgment on March 29, 1999. At the hearing, the Kekas were represented by counsel for the first time. They argued: (1) that the Credit Union had failed to adduce admissible evidence sufficient to entitle it to summary judgment; (2) that the Kekas' uncontradicted averments regarding the promised and actual interest rates on their loan created a genuine issue of material fact as to whether the Kekas were defrauded; (3) that the Credit Union's conduct constituted "unfair and deceptive business practice, the bait-and switch"; and (4) that the disclosure forms provided by the Credit Union were defective for purposes of satisfying TILA, inasmuch as they incorrectly stated (a) the date of expiration of the borrower's right to rescind the transaction and (b) the annual percentage rate. The Credit Union's counsel represented to the circuit court that he was unprepared to respond to the Kekas'

newly advanced arguments, inasmuch as they had not been raised in the Kekas' memorandum in opposition to the Credit Union's motion for summary judgment. The circuit court ordered the Kekas to submit their arguments in writing and accorded the Credit Union an opportunity to respond.

On April 9, 1999, the Kekas filed a "supplemental memorandum in further opposition to [the Credit Union's] motion for summary judgment," arguing, *inter alia*, that "[C]ongressional policy, as expressed by 15 [U.S.C. § ] 1635(c), precludes granting a creditor summary judgment on the basis of a receipt acknowledgment alone where plaintiffs deny by affidavit that they received the disclosures required by the [Truth in Lending] Act," (quoting *Powers v. Sims & Levin Realtors*, 396 F.Supp. 12, 22–23 (E.D.Va.1975), *aff'd in part and rev'd in part on other grounds*, 542 F.2d 1216 (4th Cir.1976)), and that a violation of TILA amounted to a *per se* violation of HRS ch. 480. The Kekas further argued that, inasmuch as they had been represented by counsel for several weeks only, they should be permitted to conduct discovery with respect to the issues of misrepresentation, breach of contract, and failure to disclose and deliver documents. In a declaration submitted pursuant to HRCP Rule 56(f), *see supra* note 2, the Kekas' counsel averred that "there [were] facts essential to the resolution of this case that [would] require … discovery, and that that evidence [was] needed in order to completely oppose the pending summary judgment motion[.]" On April 15, 1999, the Credit Union filed a response to the Kekas' supplemental memorandum, together with a "supplemental affidavit" of Paranial with attachments, which included a ledger and payment history regarding the Kekas' mortgage loan and a copy of the Kekas' "Disclosure Statement," all certified as "business records."

On April 20, 1999, the circuit court entered an "Order Granting Plaintiff's Motion for Summary Judgment Against All Defendants, Decree of Foreclosure and Order of Sale filed January 5, 1999," which recited that

wise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond,

summary judgment, if appropriate, shall be entered against the adverse party.

the Court having considered Plaintiff's Motion for Summary Judgment Against All Defendants, Decree of Foreclosure and Order of Sale filed January 5, 1999, the opposition, the supplemental memoranda and affidavits and having heard the arguments of counsel,

It Is Hereby Ordered Adjudged and Decreed:

The Motion is granted. There is no genuine issue of material fact, and Plaintiff is entitled to summary judgment as a matter of law.

On April 20, 1999, the Kekas moved *ex parte* to strike the Credit Union's "supplemental affidavit." The circuit court filed an order striking the "supplemental affidavit" on April 23, 1999. However, the Kekas' did not move for rescission or amendment of the April 20, 1999 order.

On May 26, 1999, the circuit court entered "Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment Against All Defendants, Decree of Foreclosure and Order of Sale Filed 1/05/99." The circuit court's findings of fact adopted Paranial's assertion regarding the Kekas' default in payment of their loan and the specific amounts owing, as set forth in Paranial's first affidavit. The circuit court entered the following conclusions of law:

10. This court has jurisdiction over all the parties in this action and all the claims presented therein.

11. [The Kekas'] Note and Mortgage were and are valid and enforceable according to their terms, without set off, claims or other affirmative defenses.

12. Plaintiff is entitled to accelerate the indebtedness due under [the Kekas'] Note and Mortgage and the entire unpaid principal balance under the said Note is now due and owing.

13. All sums due, and to become due, respectively, to Plaintiff under [the Kekas'] Note and Mortgage constitute a valid first mortgage lien upon the Property described in said Mortgage, and Plaintiff is entitled to have its Mortgage foreclosed, and all the Property covered by said Mortgage sold in the manner prescribed by law.

Therefore, the circuit court entered an order providing in relevant part:

It Is Hereby Ordered, Adjudged And Decreed:

(1) On April 20, 1999, the Court entered its Order Granting Plaintiff's Motion for Summary Judgment Against All Defendants, Decree of Foreclosure and Order of Sale filed January 5, 1999, granting summary judgment in favor of the Plaintiff on all claims asserted in its Complaint to Foreclose Mortgage; Exhibits "A" and "B"; Summons filed October 5, 1998 and against Defendants Keka on their Counterclaim filed November 24, 1998, which Order is incorporated herein by reference;

(2) That said Mortgage in favor of Plaintiff shall be and is hereby foreclosed as prayed ... and that the Property described under said Mortgage, shall be sold as hereinafter set forth;

. . .

(10) There being no just reason for delay, this shall be an express direction that judgment be entered, pursuant to Rules 54(b) and 58, H.R.C.P., as to all claims determined by this Order.

On the same day, the circuit court entered a "Judgment Based Upon Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment Against All Defendants, Decree of Foreclosure and Order of Sale Filed 1/05/99," which provided as follows:

Pursuant to Plaintiff's Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment Against All Defendants, Decree of Foreclosure and Order of Sale Filed January 5, 1999, filed concurrently herein (the "Decree"), and the Court's determination that there is no just reason for delay under Rule 54(b), [HRCP], and the express direction for the entry of this judgment,

It Is Hereby Ordered, Adjudged and Decreed That, Judgment is entered, pursuant to Rules 54(b) and 58, [HRCP], in favor of Plaintiff as to all claims against Defendants [*i.e.*, the Kekas] as determined by the Decree filed concurrently herein, in the above-entitled cause.

The Kekas' timely notice of appeal was filed on June 25, 1999. On May 26, 2000, we temporarily remanded the matter to the circuit court for entry of an amended final judgment on both the Credit Union's complaint and the Kekas' counterclaims and afforded the parties an opportunity to submit supplemental briefs.

## II. *STANDARD OF REVIEW*

 We review [a] circuit court's [grant or denial] of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. [v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85,] 104, 839 P.2d [10,] 22, [*reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) ] (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Id.* (citations and internal quotation marks omitted); *see* ... HRCP ... Rule 56(c) (1990).

*Bronster v. United Public Workers,* 90 Hawai'i 9, 13, 975 P.2d 766, 770 (1999) (quoting *Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998) (quoting *Estate of Doe v. Paul Revere Ins. Group,* 86 Hawai'i 262, 269–70, 948 P.2d 1103, 1110–11 (1997) (quoting *Morinoue v. Roy,* 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997))) (some brackets added and some in original)).

> "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

*Konno v. County of Hawai'i,* 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997) (quoting *Dunlea v. Dappen,* 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996)).... "The evidence must be viewed in the light most favorable to the non-moving party." *State ex rel. Bronster v. Yoshina,* 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)). In other words, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion]." *Maguire,* 79 Hawai'i at 112, 899 P.2d at 395 (citation omitted).

*Estate of Doe,* 86 Hawai'i at 270, 948 P.2d at 1111 (quoting *Morinoue,* 86 Hawai'i at 80, 947 P.2d at 948).

*Dairy Road Partners v. Island Ins. Co., Ltd.,* 92 Hawai'i 398, 411, 992 P.2d 93, 106 (2000).

## III. *DISCUSSION*

### A. *Inadmissibility Of Evidence Adduced By The Movant Precluded Summary Judgment.*

 The Kekas argue that the evidence set forth in or attached to Paranial's affidavit, by which the Credit Union sought to establish the Kekas' default and the amounts due on their loan, constituted inadmissible hearsay and, therefore, that there was no factual basis upon which the circuit court could legitimately enter summary judgment in favor of the Credit Union. We agree.

 "[T]he rule in Hawai'i is that '[a]n affidavit consisting of inadmissible hearsay cannot serve as a basis for awarding or denying summary judgment.'" *GE Capital Hawaii, Inc. v. Miguel,* 92 Hawai'i 236, 242, 990 P.2d 134, 140 (App.1999) (quoting *Nakato v. Macharg,* 89 Hawai'i 79, 89, 969 P.2d 824, 834 (App.1998)) (some brackets added and some in original); *Rodriguez v. Nishiki,* 65 Haw. 430, 434 n. 3, 653 P.2d 1145, 1148 n. 3 (1982); *Cahill v. Hawaiian Paradise Park Corp.,* 56 Haw. 522, 539, 543 P.2d 1356, 1367 (1975) ("To the extent that the affidavits [do] not comply with [HRCP Rule 56(e),] they should be disregarded."). The facts of *GE Capital* are remarkably similar to those in the present matter. In an action by a mortgagee to foreclose on a loan secured by the debtor's residence, the defendants-mortgagors asserted a counterclaim for rescission, pursuant to

TILA, based upon alleged nondisclosure and misrepresentation. The mortgagee's motion for summary judgment was supported by an affidavit of one of its officers, who asserted, on the basis of "personal knowledge," that the mortgagors had "failed, neglected, and refused" to pay in accordance with their loan agreement and recited the amounts allegedly due. The Intermediate Court of Appeals (ICA) reversed the circuit court's summary judgment in favor of the mortgagee on the ground that, by failing to attach sworn or certified copies of documents to which the affiant referred in his affidavit, the mortgagee had not met its initial burden of production as movant for summary judgment.

The *GE Capital* court, in turn, relied on this court's decision in *Pacific Concrete Federal Credit Union v. Kauanoe*, 62 Haw. 334, 614 P.2d 936 (1980), in which we similarly reversed a summary judgment in favor of a creditor because the facts regarding the defendant-debtor's payment history, as set forth in an affidavit in support of the creditor's motion for summary judgment, were not properly before the court, inasmuch as the affidavit merely referred to a ledger and certain checks and vouchers without attaching certified or sworn copies of them to the affidavit. We held that HRCP Rule 56(e), *see supra* note 5, required that

> facts set forth in ... affidavits [supporting motions for summary judgment] be admissible in evidence. All papers referred to in the affidavits must also be attached and sworn to or certified. These requirements are mandatory.... [M]ere statements in affidavits do not authenticate exhibits referred to unless these exhibits are sworn to or certified.

*Pacific Concrete*, 62 Haw. at 336–37, 614 P.2d at 938 (citation omitted).

The only distinction between the affidavits deemed insufficient by the *GE Capital* and *Pacific Concrete* courts, on the one hand, and the Paranial affidavit in the present matter, on the other, is that Paranial did not even bother to identify the Credit Union's records on which he was relying, but merely asserted that he was "personally familiar with the [Kekas'] payment history."

Pursuant to HRCP Rule 56(c), however, affidavits in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Consequently, affidavits which state ultimate or conclusory facts or conclusions of law cannot be utilized in support of a motion for summary judgment. *GECC Financial Corp. v. Jaffarian*, 79 Hawai'i 516, 524–25, 904 P.2d 530, 538–39 (App.) (citing *Miller v. Manuel*, 9 Haw.App. 56, 66, 828 P.2d 286, 292 (App.1991)), *modified on other grounds*, 80 Hawai'i 118, 905 P.2d 624 (1995); *see also Miller*, 9 Haw.App. at 66, 828 P.2d at 292 ("Affidavits in support of a summary judgment motion are scrutinized to determine whether the facts they aver are admissible at trial and are made on the personal knowledge of the affiant.").

Paranial's bald allegation that he was "familiar" with the Kekas' payment history does not satisfy the foregoing foundational requirement. Obviously, an affiant does not comply with the imperative of HRCP Rule 56(e) to produce and authenticate the records upon which he or she is relying merely by omitting any reference to them in the affidavit. *See Cole Taylor Bank v. Corrigan*, 230 Ill.App.3d 122, 172 Ill.Dec. 114, 595 N.E.2d 177, 181–82 (1992) (holding that, where bank officer's "affidavit essentially consisted of a summary of unnamed records at the bank," unaccompanied by records themselves and unsupported by facts establishing basis of officer's knowledge, foundation was lacking for admission of officer's opinion regarding amount due on loan); *cf. Kam Fui Trust v. Brandhorst*, 77 Hawai'i 320, 327–28, 884 P.2d 383, 390–91 (App.1994) (ruling summary of contents of voluminous writing to be admissible, pursuant to Hawai'i Rules of Evidence (HRE) Rule 1006 (1993), only when underlying documents are themselves admissible, and failure to make underlying documents available to objecting party for examination renders summary inadmissible). Absent the requisite foundation, Paranial's statements regarding the Kekas' default and the amount of their indebtedness were inadmissible, and the circuit court erred

in relying upon them in granting summary judgment in the Credit Union's favor.[6]

### B. *Genuine Issues Of Material Fact Precluded Summary Judgment.*

The Kekas argue that the facts alleged in their affidavits and declaration in opposition to the Credit Unions' motion for summary judgment and in support of their affirmative defenses and counterclaims were sufficient to generate triable issues and preclude summary judgment.

### 1. *The Truth in Lending Act*

Initially, and as a general matter, the Kekas assert that the Credit Union violated TILA by (1) failing timely to provide them with notice of their right to cancel and (2) once notice was provided, incorrectly exhibiting (a) the date of expiration of the Kekas' right to cancel and (b) the "annual percentage rate."

> The declared purpose of [TILA] is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363–368, 93 S.Ct. 1652, 1657–1660, 36 L.Ed.2d 318 (1973). Accordingly, [TILA] requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights. *See* §§ 1631, 1632, 1635, 1638. Failure to satisfy [TILA] subjects a lender to criminal penalties for noncompliance, *see* § 1611, as well as to statutory and actual damages traceable to a lender's failure to make the

requisite disclosures, *see* § 1640. Section 1640(e) provides that an action for such damages "may be brought" within one year after a violation of [TILA], but that a borrower may assert the right to damages "as a matter of defense by recoupment or set-off" in a collection action brought by the lender even after the one year is up.

> Going beyond these rights to damages, [TILA] also authorizes a borrower whose loan is secured with his "principal dwelling," and who has been denied the requisite disclosures, to rescind the loan transaction entirely "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later." § 1635(a).... [TILA] provides, however, that the borrower's right of rescission "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first," even if the required disclosures have never been made. § 1635(f). [TILA] gives a borrower no express permission to assert the right of rescission as an affirmative defense after the expiration of the 3–year period.

*Beach v. Ocwen Federal Bank,* 523 U.S. 410, 412–13, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998) (footnote omitted).

Accordingly, in *Beach,* the United States Supreme Court held that TILA "permits no federal right to rescind, defensively or otherwise, after the 3 year period of § 1635(f) has run." *Id.* at 419. The *Beach* Court explained as follows:

> It is useful to look ahead to [15 U.S.C.] § 1640 with its provisions for recovery of damages. Subsection (e) reads that the 1–year limit on actions for damages "does not

---

**6.** The Credit Union notes in its brief that properly authenticated copies of its records were attached to Paranial's second affidavit, which was itself attached to the Credit Union's response to the Kekas' supplemental memorandum in opposition to the motion for summary judgment. However, as we have noted, the circuit court struck Paranial's second affidavit, inasmuch as it violated the court's order that the Credit Union's

response be limited to answering arguments raised in the Kekas' written opposition, and the Credit Union did not obtain the circuit court's leave to adduce additional post-hearing evidence. On appellate review, we consider only the evidence properly before the circuit court. *See, e.g., State v. Onishi,* 53 Haw. 593, 597, 499 P.2d 657, 660 (1972).

bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." 15 U.S.C. § 1640(e). Thus the effect of the 1–year limitation provision on damages actions is expressly deflected from recoupment claims. The quite different treatment of rescission stands in stark contrast to this, however, there being no provision for rescission as a defense that would mitigate the uncompromising provision of § 1635(f) that the borrower's right "shall expire" with the running of the time.

*Id.* at 418–19, 118 S.Ct. 1408.

█ The holding in *Beach* is dispositive of the Kekas' contention that TILA accorded them the right to rescind their loan transaction. Their right to rescission expired, at the latest, three years after they entered into the transaction, *i.e.*, on June 7, 1997, and their attempt to assert that right as a defense in the Credit Union's action to foreclose on the mortgage on their residence was as ineffective as their original attempt to rescind the transaction by sending the cancellation notice to the Credit Union on August 17, 1998.[7]

█ However, *Beach* makes clear that the Kekas were entitled to assert their recoupment claim based upon the Credit Union's alleged violation of TILA. As we have noted, the Kekas allege that they did not timely receive notice of their right to cancel and other disclosure statements from the Credit Union, as required by TILA. A lender's failure to provide these documents in the prescribed manner constitutes a violation of TILA. 15 U.S.C. § 1638(b); *Bartholomew v. Northampton Nat'l Bank of Easton, Easton, PA.*, 584 F.2d 1288, 1296 (3 Cir.1978) (TILA "requires that creditors make full disclosure prior to the extension of credit").

As attachments to Paranial's affidavit, the Credit Union produced "true" copies of the TILA disclosures, which the Kekas admit that they signed on June 7, 1994. The Kekas counter in their affidavits and declaration, however, that they did not receive copies of the documents at the time. TILA provides that "written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c). The case law of other jurisdictions is well settled that a debtor's affidavit averring non-delivery is sufficient to create a genuine issue of material fact as to whether the statutory presumption had been rebutted, thereby precluding summary judgment with respect to a claim based upon a debtor's assertion of non-delivery. *Stone v. Mehlberg*, 728 F.Supp. 1341, 1353–54 (W.D. Mich.1989 & Supp. Opinion 1990); *Powers v. Sims & Levin Realtors*, 396 F.Supp. 12, 22–23 (E.D.Va.1975) ("congres-

---

7. The Kekas suggest that *Beach* should not be applied retroactively, inasmuch as, prior to 1998, when *Beach* was decided, the prevailing view had been that the three-year limit of 15 U.S.C. § 1635(f) did not apply to a rescission claim asserted defensively. Their argument, however, is foreclosed by the holding in *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule ." *Id.* at 97, 113 S.Ct. 2510. *See also Fidler v. Central Cooperative Bank*, 226 B.R. 734, 737 n. 7 (Bankr.D.Mass.1998) ("Although the events giving rise to this litigation predated the Supreme Court's decision in *Beach*, that decision has full retroactive effect in this case because it is still an open case subject to direct review.") (Citing *Harper*.). Furthermore, even if we were to apply this jurisdiction's applicable retroactivity test, namely, that "[w]here substantial prejudice results from the retrospective application of new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only," *Catron v. Tokio Marine Management, Inc.*, 90 Hawai'i 407, 411, 978 P.2d 845, 849 (1999) (quoting *State v. Ikezawa*, 75 Haw. 210, 214–15, 857 P.2d 593, 597–98 (1993)), which is, in essence, the test formerly espoused by the United States Supreme Court, *see Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), but subsequently abrogated, *see Harper, supra*, the *Beach* holding would still control, inasmuch as the Kekas have failed to demonstrate any prejudice that would result from the retroactive application of *Beach*, much less that *Beach* has established a new legal principle in this jurisdiction.

sional policy, as expressed by 15 U.S.C. § 1635(c), precludes granting a creditor summary judgment on the basis of a receipt acknowledgment alone where the [debtors] deny by affidavit that they received the disclosures required by [TILA]"); *Cintron v. Bankers Trust Co.,* 682 So.2d 616, 616–17 (Fla.Dist.Ct.App.1996); *Award Lumber & Constr. Co., Inc. v. Humphries,* 110 Ill. App.3d 119, 65 Ill.Dec. 676, 441 N.E.2d 1190, 1191–92 (1982) (discussing relevant case law and concluding that, "while an affidavit of non-delivery from defendant in this case would have sufficed to create a material issue of fact, the mere allegation thereof ... is insufficient to rebut the presumption raised by the signed acknowledgment of receipt"). We therefore hold that the Kekas' affidavits and declaration raised a genuine issue of material fact as to whether the Credit Union timely provided the Kekas with the disclosures required by TILA. Having done so, we must, on that basis alone, vacate the circuit court's summary judgment in favor of the Credit Union with respect to Count Four of the Kekas' counterclaim for damages allegedly resulting from the foregoing violation of TILA.

 The Kekas further urge that the documents proffered by the Credit Union as the statutorily required disclosures did not comply with the standards prescribed by TILA, inasmuch as the date of expiration of the Kekas' right to cancel the transaction, which the Credit Union stated as "June 13, 1994," and the annual percentage rate of interest, stated as "8.9994%," were incorrect. Federal law generally requires strict compliance with the technical requirements of TILA. *See, e.g., Jackson v. Grant,* 890 F.2d 118, 120 (9th Cir.1989) (incorrect expiration date that was prior to actual consummation of loan); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n.,* 791 F.2d 699, 704 (9th Cir.1986) (expiration date omitted); *Riopta v. Amresco Residential Mortgage Corp.,* 101 F.Supp.2d 1326 (D.Haw.1999) (improperly dated notice of right to cancellation). Federal courts have held that "[t]he legal inquiry about the quality of disclosure is not directed at whether the credit consumer was actually confused or misled.... The court must engage only in an objective inquiry into the violation of specific

provisions of TILA requirements." *Jenkins v. Landmark Mortgage Corp. of Virginia,* 696 F.Supp. 1089, 1095 (W.D.Va.1988) (citing *Powers,* 542 F.2d at 1219).

 Nevertheless, it has been acknowledged that "[s]trict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language of [TILA], there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation." *Smith v. Chapman,* 614 F.2d 968, 972 (5th Cir.1980). Thus, in ruling that a particular manner of disclosure violated TILA, the courts have invariably discussed why the disclosure was confusing, misleading, or otherwise potentially detrimental to the borrower. *See, e.g., Jenkins, supra.* In the cases involving noncompliance with the requirement that the date of expiration of the right of recission be disclosed, lenders have either failed to disclose the expiration date altogether or stated a rescission period shorter than three days, "counter to the basic rationale for a rescission, [*i.e.,*] 'to give the debtor an opportunity to reflect in the quiet of his home' without undue pressure." *Jenkins,* 696 F.Supp. at 1095 n. 4 (quoting *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 249 n. 9 (6th Cir.1980), and *Curry v. Fidelity Consumer Discount Co.,* 656 F.Supp. 1129, 1131 (E.D.Pa.1987)). When a lender allows a borrower to cancel the loan transaction during a period greater than the three days prescribed by TILA, no such prejudice to the borrower results.

The Credit Union's notice to the Kekas of their right to cancel informed that, "[i]f you cancel by mail or by telegram, you must send the notice no later than midnight of *June 13, 1994* (or midnight of the third business day following the latest of the three events listed above)," (*i.e.,* "(1) the date of transaction, which is *June 7, 1994;* or (2) the date you received your [TILA] disclosures; or (3) the date you received this notice of your right to cancel"). (Emphasis added.) Inasmuch as June 7, 1994 was a Tuesday, the third business day thereafter was Friday, June 10, 1994. The Kekas insist that the Credit Union

was required to state "June 10, 1994," rather than "June 13, 1994," in the disclosure.[8]

 12 C.F.R. §§ 226.1 through 226.29, known as "Regulation Z," which implements TILA's detailed disclosure requirements, provides in relevant part that "[t]he consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.23(a). In 12 C.F.R. § 226.23(b), the regulation provides that "[t]he notice [of right to rescind] shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose ... (v)[t]he date the rescission period expires." Thus, although the regulation entitles the consumer to rescind "until midnight of the third business day following consummation," it merely directs the creditor

"clearly and conspicuously" to disclose "the date the rescission period expires." Inasmuch as a disclosure that recites a date *later* than the third business day following the date of the transaction as being "the date the rescission period expires" does not *prejudice* the consumer's statutory right of rescission, but actually *benefits* the consumer by extending the rescission period, we hold that such a disclosure materially complies with 12 C .F.R. § 226.23(b)(v).[9] Accordingly, we reject the Kekas' argument that the Credit Union's notice of right to cancel violated TILA on the grounds of nondisclosure of the expiration of the rescission period.[10]

### 2. *HRS ch. 480*

The Kekas next contend that genuine issues of material fact as to whether the Credit Union's conduct violated HRS §§ 480–2 (1993)[11] and 480–12 (1993)[12] precluded the

**8.** The Credit Union has pointed out that June 10, 1994 was a Hawai'i state holiday, King Kamehameha Day, and June 11 and 12 fell on Saturday and Sunday, so that June 13 was, in fact, the third business day following June 7. However, the Federal Reserve System's Regulation Z, which governs TILA disclosure requirements, provides that

"Business day" means a day on which the creditor's offices are open to the public for carrying on substantially all of its business functions. However, for purposes of rescission under [12 C.F.R.] §§ 226.15 and 226.23, and for purposes of § 226.31, the term means all calendar days except Sundays and the legal public holidays specified in 5 U.S.C. [§ ] 6103(a), such as New Year's Day, the Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day. 12 C.F.R. § 226.2(a)(6). Inasmuch as 5 U.S.C. § 6103(a) does not currently list King Kamehameha Day as a legal holiday, and Saturdays do not count toward the rescission period pursuant to Regulation Z, *see supra*, the Credit Union actually overstated the Kekas' statutory entitlement to rescind by three days in its notice of right to cancel.

**9.** Some federal courts have stated that failure to notify the consumer of the precise date of expiration of the right to rescind constitutes a technical violation of TILA. *See Mayfield v. Vanguard Sav. & Loan Ass'n*, 710 F.Supp. 143, 146 (E.D.Pa. 1989) ("With respect to the rescission notices, the Board's regulations require creditors to provide customers with a notice of their right to rescind that specifies, *inter alia*, the precise date upon which the three day rescission period expires. 12 C.F.R. 226.23(b)(5)."); *Semar*, 791

F.2d at 701 ("TILA and its regulations, issued by the Federal Reserve System, 12 C.F.R. §§ 226.1–.29 ('Reg.Z'), require the lender to provide a form stating the specific date on which the three-day rescission period expires."). However, these pronouncements are dicta, insofar as the lenders in these cases omitted the expiration date from the prescribed notices altogether. To our knowledge, no federal court has held that a lender violated the TILA disclosure requirements by reciting an expiration date *later* than the third business day following consummation of the transaction.

**10.** Because the Kekas failed on appeal to advance any legal argument to support their claim that the annual percentage rate of interest stated in the Credit Union's disclosure statement was incorrect, we do not address their point of error in that regard. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) (2000) ("Points not argued may be deemed waived.").

**11.** HRS § 480–2 provides in relevant part:

**Unfair competition, practices, declared unlawful.** (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

(b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as from time to time amended.

**12.** HRS § 480–12 provides that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity."

circuit court from entering summary judgment in the Credit Union's favor and against them on Count Three of their counterclaim and the Credit Union's foreclosure action, respectively. In particular, the Kekas rely on the Credit Union loan officer's alleged representations (1) prior to closing, that the Kekas' loan would bear a seven and one-fourth percent interest rate, rather than the nine percent actually charged at closing, and (2) at the time of closing, that it would be "no problem" to lower the rate "when the in house rate changes," which the Credit Union later disavowed. The Kekas characterize the Credit Union's alleged conduct as a "bait-and-switch."

■ As a threshold matter, we note that the transaction at issue in the present matter falls within the ambit of HRS ch. 480, inasmuch as (1) a loan extended by a financial institution is activity involving "conduct of any trade and commerce" and (2) loan borrowers are "consumers" within the meaning of HRS § 480–1 (1993).[13] The first of these propositions is a consequence of our holding in *Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 905 P.2d 29 (1995), in which we construed HRS § 480–2, *see supra* note 11, to limit claims of unfair or deceptive trade practices, within the purview of HRS chapter 480, to transactions occurring within a "business context," *id.* at 65, 905 P.2d at 40, which, by their very nature, include transactions conducted by a financial institution. *See Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir.1993) (holding that transactions by pawn shop constituted loans subject to TILA and violated HRS § 480–2); *Baird v. Norwest Bank*, 255 Mont. 317, 843 P.2d 327, 334 (1992) (holding that Montana Unfair Trade Practices and Consumer Protection Act governed making and collecting consumer loans by banks); *Russell v. Fidelity Consumer Discount Co.*, 72 B.R. 855, 870–72 (Bankr.E.D.Pa.1987) (Pennsylvania Unfair Trade Practices and Consumer Protection law applied to conduct of commercial lender). The second proposition derives from our holding in *Cieri* that "real estate or residences qualify as 'personal investments' pursuant to HRS § 480 1"; accordingly, the Kekas "qualify as 'consumers' who 'committed money in a personal investment.'" *Cieri*, 80 Hawai'i at 69; 905 P.2d at 44.

■ The term "bait and switch" is usually applied in the context of advertising goods or services with the intent not to sell them as advertised.

> The practice of modifying proposed terms of a contract as the negotiations proceed is not at all analogous to "bait and switch" selling. The recognized deceptive practice of "bait and switch" involves an advertisement and offer of a product which is not bona fide because what the merchant actually has on hand and intends to sell is significantly different from that which drew the potential customer in. The technique, which is essentially a variant of false advertising, involves luring prospective purchasers through the "bait" of a desirable item, and then talking the customer into or steering him over to a less desirable item, presumably with greater profit margin for the seller. The trick is to lure the prospective "sucker" and then overwhelm him with glib salesmanship. The essence of this practice is that the seller really has no intention of delivering the product advertised.

*Goldberg v. Manhattan Ford Lincoln–Mercury, Inc.*, 129 Misc.2d 123, 492 N.Y.S.2d 318, 322 (N.Y.Sup.Ct.1985) (citations omitted). *See also Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 157 Cal.Rptr. 392, 598 P.2d 45, 52 (1979); *Tashof v. Federal Trade Comm'n.*, 437 F.2d 707, 709 n. 3 (D.C.Cir.1970) (citing *Guides Against Bait Advertising*, 16 C.F.R. § 238); *Garcia v. Overland Bond & Inv. Co.*, 282 Ill.App.3d 486, 218 Ill.Dec. 36, 668 N.E.2d 199, 204 (1996) ("bait and switch occurs[, within the meaning of Illinois Consumer Fraud Act,] when a seller makes alluring but insincere offer to sell a product or service that advertiser in truth does not intend or want to sell") (internal quotation signals

---

13. HRS § 480–1 provides in relevant part that " 'Consumer' means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."

omitted) (citations omitted); *Ford Motor Credit Co. v. Russell,* 519 N.W.2d 460, 463 (Minn.Ct.App.1994) (advertising eleven percent interest rate and providing financing to customer at thirteen and three-quarters of percent rate was not bait and switch operation when lender offered eleven percent rate to qualified customers); *Brashears v. Sight'N Sound Appliance Centers, Inc.,* 981 P.2d 1270 (Okla.Civ.App.1999) (Oklahoma Consumer Protection Act expressly prohibits "bait and switch" advertising); *Parrott v. Carr Chevrolet, Inc.,* 156 Or.App. 257, 965 P.2d 440, 448–49 (1998) (Oregon Unlawful Trade Practices Act expressly prohibits "bait and switch transactions," making it unlawful to advertise goods with intent not to provide them as advertised).

However, several courts have referred to "bait and switch" practices in contexts not involving public advertising. *See, e.g., S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.,* 84 F.3d 629, 634 (2d Cir.1996) (court construed as claim for relief sounding in tort allegations that defendant engaged in "bait and switch" tactic by luring plaintiff into exclusive negotiations with false promises and making preliminary loan proposals with attractive terms, thereafter changing terms of loan to plaintiff's detriment); *Cummings v. Warren Henry Motors, Inc.,* 648 So.2d 1230, 1233 (Fla.Ct.App.1995) (plaintiff sufficiently stated claim for relief for violation of Florida's Deceptive and Unfair Trade Practices Act by claiming that defendant used "bait and switch" tactic in representing transaction to be sale and in fact having plaintiff sign lease); *Miles Rich Chrysler–Plymouth, Inc. v. Mass,* 201 Ga.App. 693, 411 S.E.2d 901, 904–05 (Ga.Ct.App.1991) (jury could find a variation of "bait and switch" scheme, in violation of Georgia's Fair Business Practices Act, when defendant car dealer led plaintiff to believe that she had ordered vehicle, but no such vehicle had been ordered or available, and defendant subsequently tried to pressure plaintiff into buying more expensive vehicle).

As the cases cited *supra* demonstrate, "bait and switch" practices are proscribed by consumer protection laws. Inasmuch as the Kekas do not aver that the

Credit Union engaged in misleading advertising, but, rather, that it misrepresented the interest rate that would be available to them, the present matter does not involve the classic "bait and switch" scenario but, instead, a variation on the theme. In any event, the averments in their affidavits and declaration raise the issue whether they were victims of an unfair or deceptive business practice.

The phrase "unfair or deceptive acts or practices in the conduct of any trade or commerce" is not defined in HRS chapter 480. However, HRS § 480–3 ( [1993] ) provides that the chapter "shall be construed in accordance with judicial interpretations of similar federal antitrust statutes[,]" and HRS § 480–2 is "a virtual counterpart of § 5(a)(1) of the Federal Trade Commission Act." *Island Tobacco Co. v. R.J. Reynolds Tobacco Co.,* 63 Haw. 289, 300, 627 P.2d 260, 268 (1981) (footnote omitted). Our supreme court has stated, "HRS § 480–2, as its federal counterpart in the FTC Act, was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest business[persons]." *Ai v. Frank Huff Agency, Ltd.,* 61 Haw. 607, 616, 607 P.2d 1304, 1311 (1980) (footnote omitted).

In *Rosa v. Johnston,* 3 Haw.App. 420, 651 P.2d 1228 (1982), we adopted the definition set forth in *Spiegel, Inc. v. FTC,* 540 F.2d 287, 293 (7th Cir.1976), that "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rosa,* 3 Haw.App. at 427, 651 P.2d at 1234. The federal cases have defined deception as an act causing, as a natural and probable result, a person to do that which he [or she] would not otherwise do. *Bockenstette v. FTC,* 134 F.2d 369 (10th Cir.1943). However, the cases indicate that actual deception need not be shown; the capacity to deceive is sufficient. *Goodman v. FTC,* 244 F.2d 584 (9th Cir.1957).

*State ex rel. Bronster v. United States Steel Corp.,* 82 Hawai'i 32, 51, 919 P.2d 294, 313 (1996) (quoting *Eastern Star, Inc. v. Union*

*Building Materials Corp.,* 6 Haw.App. 125, 132–33, 712 P.2d 1148, 1154 (1985)) (some brackets added and some in original) (footnote omitted).

The record in the present matter contains very scanty evidence of the circumstances surrounding the Kekas' loan transaction. Beyond what appears in the Kekas' affidavits and declaration, there is no evidence regarding when the Kekas applied for the loan, when precisely the alleged misrepresentations were made, what precisely was allegedly promised to the Kekas, whether any of the alleged statements were in writing, and whether the seven and one-fourth percent interest rate was ever offered by the Credit Union to any of its customers during the relevant time period.[14] Neither the Credit Union nor the Kekas conducted any discovery, and, in pursuing its motion for summary judgment, the Credit Union largely ignored the Kekas' counterclaims and defenses based on the alleged promise of a seven and one-fourth percent interest rate.

Nevertheless, the Kekas' averments raise a genuine issue of material fact as to whether the Credit Union's loan officer negotiated the loan with the Kekas in a deceptive manner, and, in particular, whether the alleged representations during the negotiation of the interest rate caused the Kekas, "as a natural and probable result," to believe that the interest rate to be charged on their loan would be seven and one-fourth percent and, therefore, "to do that which [they] would not otherwise do." *See United States Steel Corp.,* 82 Hawai'i at 51, 919 P.2d at 313. If, at the time when the loan documents were ready to be signed and the Kekas were faced with a nine percent rate, the Credit Union "unethically" or "unscrupulously" attempted to influence the Kekas to execute them by way of further deceptive representations, designed, as the Kekas allege, to alleviate their concerns that the interest rate was not that for which they had bargained by assuring them that the actual rate would be seven and one-fourth percent, *see id.,* then the Credit Union's conduct would indeed be analogous to a "bait and switch." *See Goldberg,* 492 N.Y.S.2d at 322. Such conduct would have been (1) "unethical, oppressive, unscrupulous and substantially injurious to consumers" and (2) would have reinforced the tendency to cause the Kekas, "as a natural and probable result," to enter into the transaction they may otherwise have declined, thus violating HRS § 480–2 as an unfair and deceptive trade practice. *See United States Steel Corp.,* 82 Hawai'i at 51, 919 P.2d at 313.

Our consumer protection statute is remedial in nature and must be liberally construed in order to accomplish the purpose for which it was enacted. *Cieri,* 80 Hawai'i at 68, 905 P.2d at 43 (citing *Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 123, 883 P.2d 38, 44 (1994)). "Remedial statutes are liberally construed to suppress the perceived evil and advance the enacted remedy." *Id.* (Brackets omitted). Applying this principle, and viewing the present record and the inferences drawn therefrom in the light most favorable to the Kekas, there is a genuine issue of material fact as whether the Credit Union engaged in unfair and deceptive trade practices, in violation of HRS ch. 480.[15]

---

14. Paranial's second affidavit, attached to the Credit Union's response to the Kekas' supplemental memorandum in opposition to the Credit Union's motion for summary judgment, avers (1) that the Kekas applied for the loan in April 1994, (2) that an initial TILA disclosure statement, dated April 11, 1994 and signed by the Kekas, informed the Kekas of the nine percent interest rate applicable to the loan for which they had applied, and (3) that, between April 1994 and June 1994, the Credit Union had not made any mortgage loans to anyone at an annual percentage rate lower than seven and three-quarters percent. However, as noted above, the circuit court struck the affidavit, and the evidence contained in it is therefore not before us as part of the record in this appeal.

15. The Kekas further argue that a violation of TILA constitutes a *per se* violation of HRS § 480–2. The United States District Court for the District of Hawai'i has held to the contrary. *Riopta v. Amresco Residential Mortgage Corp.,* 101 F.Supp.2d 1326, 1332–34 (D.Haw.1999). We agree with *Riopta* that TILA and HRS § 480–2 have differing "scope and application." *Id.* TILA was intended to ensure informed credit decisions by consumers, whereas HRS § 480–2 was designed to prevent fraudulent business practices directed against consumers. Thus, although the ultimate objective of both statutes is consumer protection, they effect their common purpose by non-coextensive means. Several courts have held that violations of TILA did not necessarily offend other consumer protection laws, *see Riop-*

### 3. Common law fraud

The Kekas alleged in Count One of their counterclaim that the Credit Union "negligently represented material facts to [the Kekas, on which they] reasonably relied; and said false statements induced [the Kekas to give the Credit Union security interest in their] principal dwelling ... to their substantial detriment." On appeal, the Kekas argue that the Credit Union's conduct amounted to "fraud in inducement" constituting grounds for "common law rescission."

To constitute fraudulent inducement sufficient to invalidate the terms of a contract, there must be (1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his or her] damage.

The false representation, to be actionable, must relate to a past or existing material fact, and not to the happening of future events[.] Generally, fraud cannot be predicated upon statements [that] are promissory in their nature at the time they are made and [that] relate to future actions or conduct. A promise relating to future action or conduct will be actionable, however, if the promise was made without the present intent to fulfill the promise[.]

*Honolulu Fed. Sav. & Loan Ass'n v. Murphy*, 7 Haw.App. 196, 201–02, 753 P.2d 807, 811–12 (1988) (first, third, and fourth brackets added) (internal quotation marks and citations omitted); *accord Hawaii's Thousand Friends v. Anderson*, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989) (listing the elements of fraud in the inducement); *Stahl v. Balsara*, 60 Haw. 144, 149, 587 P.2d 1210, 1214 (1978) (discussing past or present fact requirement).

*Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Hawai'i 300, 312, 944 P.2d 97, 109 (App.1997) (brackets in original).

The Kekas may not predicate their fraud claim on the promise of seven and one-fourth percent interest rate allegedly made by the Credit Union's loan officer during the negotiation of the loan, inasmuch as they acknowledged that they did not rely on it when they actually executed the loan agreement. The record is uncontroverted that, prior to signing the loan documents on June 7, 1994, they were aware that the interest rate appearing on the loan papers was nine percent. The Kekas averred, however, that they discussed the possibility of lowering the rate with the loan officer, who allegedly represented that it would be "no problem" to change the interest rate on their loan in the future. Their averments are sufficient to generate a genuine issue of material fact with respect to their common law fraud claim because a reasonable trier of fact could construe the loan officer's representation as a promise, "made without the present intent to fulfill" it, to lower the rate at a future time. *Pancakes*, 85 Hawai'i at 312, 944 P.2d at 109. Such a construction could be bolstered by the loan officer's alleged response, one year later, to the Kekas' request that the rate be reduced to seven and one-quarter percent, to the effect that it would be "too much trouble" to do so. That alleged response, which directly contradicted the alleged earlier promise, as opposed to merely explaining why the promise could not be fulfilled, could inferentially suggest that the loan officer's promise was illusory from the beginning, lacking any intention of fulfillment.

### IV. CONCLUSION

Based on the foregoing analysis, we partially vacate the circuit court's amended final judgment, filed on June 14, 2000 in favor of the Credit Union and against the Kekas, and

---

ta,101 F.Supp.2d at 1334, and the cases cited therein. Accordingly, as illustrated by sections III.B.1 and 2 of this opinion, distinct analyses are required to determine whether conduct violating TILA is also violative of HRS § 480–2. Specifically, failure to provide the borrower with

TILA-required disclosure statements does not, as a *per se* matter, violate HRS § 480–2, inasmuch as such conduct does not necessarily offend an established public policy or constitute an immoral, unethical, oppressive, unscrupulous or substantially injurious practice. *Cf. Ripota, supra.*

remand the matter for further proceedings, consistent with this opinion, with respect to the Credit Union's complaint for foreclosure and Counts One, Three, and Four of the Kekas' counterclaim. In all other respects, the circuit court's amended final judgment is affirmed.