LUIS GARCIA *et al.*, Plaintiffs-Appellants, v. OVERLAND BOND AND INVESTMENT COMPANY *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—94—2619

Opinion filed July 5, 1996.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, J. Eric Vander Arend, and Danielle R. Gomez, all of Edelman & Combs, and Lawrence Walner, of Lawrence Walner & Associates, both of Chicago, for appellants.

David A. Shapiro, of Laser, Pokorny, Schwartz, Friedman & Economos, P.C., of Chicago, for appellees.

JUSTICE EGAN delivered the opinion of the court:

The defendant Overland Bond & Investment Company operates a business in Chicago called the Car Credit Center, through which the defendant sells used cars and provides financing for their purchase. The defendant Edward Bass is the general manager of the Car Credit Center. The plaintiffs, purchasers of cars from the Car Credit Center, filed a multicount complaint against Overland, including allegations that the defendant violated the Consumer Fraud And Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1992)) (Consumer Fraud Act or the Act) by engaging in deceptive advertising in the selling and financing of its cars. The plaintiffs also alleged that Bass should be held individually liable for his actions while working at the Car Credit Center.

The trial judge dismissed count I of the complaint pursuant to the defendants' motion under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) for failure to state a cause of action. The trial judge dismissed all counts against Bass. The plaintiffs contend that the trial judge improperly resolved issues of fact and erred, as a matter of law, in applying section 2 of the Act to their complaint. They also contend that they alleged sufficient facts to support a finding that Bass should be held personally responsible.

Because the counts at issue were dismissed pursuant to section 2—615, we review the allegations of the complaint *de novo*, accepting as true all well-pleaded allegations and drawing all reasonable inferences in a light most favorable to the plaintiff. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1083, 634 N.E.2d 306 (1994). We will uphold the dismissal only if "it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover." *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 11, 585 N.E.2d 51 (1991). The relevant allegations in the plaintiffs' complaint are as follows.

On March 19, 1991, plaintiff La Quesia Garner visited the Car Credit Center in response to various advertisements she had seen in newspapers and on television. On March 25, 1991, plaintiffs Luis and Mary. Garcia visited the Car Credit Center in response to such advertisements. The plaintiffs allege that these advertisements target unsophisticated, low-income buyers such as, inferentially, themselves.

Copies of three print advertisements similar to those Garner and the Garcias saw are attached to the complaint. Each of these announces in large, bold print that customers may purchase vehicles

with "NO MONEY DOWN" or "NO DOWN PAYMENT." One of the advertisements also announces "EASY CREDIT," and another offers "INSTANT CREDIT" and "LOW BANK RATE FINANCING." Each of the advertisements offers written guarantees or warranties. They also display either pictures of cars with offering prices or a long list of cars, stating their make and model year followed by a price. At the bottom of one advertisement containing a list of cars and prices along with an offer of "easy credit," in very small print, is the following disclaimer: "The above autos are one of a kind and sold on a 1st come 1st serve basis. This ad must be presented at time of purchase to avail yourself of these prices. Some are as shown. Above terms with o.k. credit ***. Cars subject to prior sale."

The script of a Car Credit Center television advertisement that has been translated from Spanish to English is also attached to the complaint. That advertisement announces twice that customers need pay "no money down" and also that "We guarantee your car in writing." These advertisements contain no disclaimers.

On his visit to the Car Credit Center, Luis Garcia agreed to purchase a used 1985 GMC van and to trade in his 1979 Mercury. Garcia also provided a downpayment of $1,500. Sales representatives induced Garcia to sign a bill of sale by offering him "easy credit" and by assuring him that he and his wife could return the van if they did not like it. The bill of sale contained a limited warranty on the motor, transmission, drive and differential. Other than that, the van was sold on an "as is" basis. Garcia also signed a second bill of sale along with a retail installment contract. These were Spanish-language documents. The installment contract provided for financing at an annual rate of 29.64%. Garcia also signed a wage assignment.

According to the complaint, the van was defective in numerous respects, including among other things: poor brakes; faulty engine and transmission; front-end misalignment; loose fan belt; malfunctioning horn; faulty locks; malfunctioning heating; inoperative lights; and a worn-out muffler. These defects rendered the van unsafe. On March 26, 1991, Garcia brought the van back to the Car Credit Center for service. The Car Credit Center failed to fix many of the defects, thus breaching its written warranty.

On March 30, 1992, the Car Credit Center issued a notice garnishing Garcia's wages according to the terms of the wage assignment. On April 1, 1992, Garcia unilaterally revoked his wage assignment.

La Quesia Garner visited the Car Credit Center on March 19, 1991, to purchase a 1985 Ford Tempo, several of which she had seen advertised costing between $2,450 and $2,950. Her visit resulted in the purchase of a 1984 Ford Tempo at a cost of $5,995. She made a

downpayment of $1,000 on the sales price. She entered into a retail installment agreement in which she agreed to pay interest at the annual rate of 33.11%. Like Garcia, Garner received a warranty on the transmission, drive shaft and differential; otherwise the sale was "as is." She also executed a wage assignment.

The car Garner purchased was defective because the engine and transmission were worn out. She discovered this because she had trouble shifting gears when she was on the highway, and the engine was smoking. Various mechanics informed her that the engine and transmission were defective. This rendered the car unsafe to drive. The defects were of such magnitude that the Car Credit Center should have known about them. On March 22, 1991, Garner returned the car and asked for a replacement. The Car Credit Center refused to take the car back. Garner demanded that the defects be repaired, which the Car Credit Center apparently initially agreed to do. However, on a subsequent visit to have repairs made, the Car Credit Center refused to service the vehicle "on the pretense that the engine worked properly." The Car Credit Center refused to work on the transmission for the same reason.

In May 1991, the car stopped working, and Garner stopped making payments on it. She had the car towed to the Car Credit Center and informed them that she revoked her acceptance of the vehicle.

■ The plaintiffs contend that these allegations state the basis of a claim for deceptive practice under section 2 of the Consumer Fraud Act.[1] Section 2 provides:

> "[D]eceptive acts or practices, including *** the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' *** are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2 (West 1992).

Section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 1992)) includes as deceptive trade practices "(1) the

---

[1]The plaintiffs' complaint also alleges that the defendant's advertising practices are "unfair" within the meaning of section 2. However, they fail to argue this point on appeal, thereby waiving it for purposes of review under Supreme Court Rule 341(e)(7). 134 Ill. 2d R. 341(e)(7).

advertisement of goods or services with the intent not to sell them as advertised, and (2) any other conduct which similarly creates a likelihood of confusion or of misunderstanding." *Williams v. Bruno Appliance & Furniture Mart, Inc.*, 62 Ill. App. 3d 219, 221, 379 N.E.2d 52 (1978).

■ In order to state a claim for deceptive practice under section 2 of the Consumer Fraud Act, a plaintiff must prove (1) a deceptive act or practice, (2) an intent by the defendant that he rely on the deception, and (3) that the deception occurred in the course of conduct involving a trade or commerce. *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542, 607 N.E.2d 194 (1992); *Griffin v. Universal Casualty Co.*, 274 Ill. App. 3d 1056, 1065, 654 N.E.2d 694 (1995); *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App. 3d 843, 856, 575 N.E.2d 1378 (1991). Significantly, unlike common law fraud, the Consumer Fraud Act does not require that the plaintiff have relied on the deception. *Siegel*, 153 Ill. 2d at 542.

■ The plaintiffs contend that the advertisements demonstrate that the defendant engaged in deceptive practices revolving around its offers of purchase and financing terms. The defendant argues, and the trial judge agreed, that the plaintiffs have not alleged sufficient facts which, if proved, establish any deceptive practice. Illinois courts have consistently held that an advertisement is deceptive "if it creates the likelihood of deception or has the capacity to deceive." *Knecht Services*, 216 Ill. App. 3d at 857; *Bruno Appliance*, 62 Ill. App. 3d at 222. Thus, a plaintiff states a claim for relief under section 2 of the Consumer Fraud Act if a trier of fact could reasonably determine that a "defendant had advertised goods with the intent not to sell them as advertised." *Bruno Appliance*, 62 Ill. App. 3d at 222. Furthermore:

> " '[T]he test to be used in interpreting advertising is the net impression that it is likely to make on the general populace. *** It is immaterial that a given phrase considered technically may be construed so as not to constitute a misrepresentation or that a deception is accomplished by innuendo rather than by affirmative misstatement.' " *Bruno Appliance*, 62 Ill. App. 3d at 222, quoting *In re Rodale Press, Inc.*, 71 F.T.C. 1184, 1237-38 (1967).

Given these standards, we believe that count I of the plaintiffs' complaint states a cause of action under section 2 of the Consumer Fraud Act.

The defendant relies primarily on *Talbert v. Home Savings Bank of America, F.A.*, 265 Ill. App. 3d 376, 638 N.E.2d 354 (1994), contending that the plaintiffs have not alleged facts indicating that they requested the purchase and financing terms offered in the defendant's

advertisements. The plaintiffs assert that *Talbert* is not reflective of Illinois law in that its requirement that one request the advertised terms requires that a plaintiff allege reliance on the deceptive advertisement. Although we disagree with the plaintiffs' characterization of the holding in *Talbert*, we agree that the case is factually distinguishable from this case.

In *Talbert*, the defendant advertised that it offered certain no fee, no points home mortgage loans. The plaintiff entered into a loan agreement which charged points. He alleged he had been deceived by the advertisement. However, the court stressed that the plaintiff had acknowledged in writing that the defendant had explained the various loan programs it had available and that he understood them and had chosen a particular program which carried the fee. *Talbert*, 265 Ill. App. 3d at 377-78.

Here, on the other hand, the plaintiffs allege that the defendant rarely, if ever, makes available the terms in its advertisements. The plaintiffs claim they visited the Car Credit Center in response to the defendant's advertising of (1) no money down; (2) easy credit; (3) bank rate financing; (4) written guaranties; and (5) offers of specific merchandise which was not available at the advertised price. Unlike in *Talbert*, there is no indication that the defendant offered the plaintiffs a variety of purchase and financing terms in addition to those in the advertisements, one of which each plaintiff chose. Furthermore, a reasonable inference from the allegations of the complaint is that the plaintiffs, in responding to the defendant's advertisements, were seeking the terms offered. Thus, we do not think *Talbert* controls this case.

The defendant also attempts to defeat the plaintiffs' claims by relying on the disclaimer which appears at the bottom of one of the advertisements. The operative part of the disclaimer is that the terms of its advertisements are available with "o.k. credit." Even assuming this same disclaimer appears at the bottom of all of the defendant's print advertisements, we do not think that, as a matter of law, it negates the net impression the advertisements make on the general populace, which the plaintiffs allege is that the defendant offers easy, lenient credit terms at low bank interest rates. *Federal Trade Comm'n v. US Sales Corp.*, 785 F. Supp. 737, 745 (N.D. Ill. 1992). Leaving aside our supposition that if the defendant is willing to extend credit to a buyer, he likely possesses "o.k. credit," we believe the meaning of "o.k. credit" for purposes of section 2 is a question of fact not susceptible to resolution on a motion to dismiss under section 2—615. *Datacom Systems*, 146 Ill. 2d at 34-35. Importantly, the disclaimer does not even mention the defendant's offer of no-

downpayment purchases. Finally, the defendant's television commercials apparently contain no disclaimers whatsoever. Therefore, we do not believe the mere presence of these limited disclaimers defeats the plaintiffs' claims as a matter of law.

■ The plaintiffs' core allegation is that the defendant engages in "bait and switch" advertising. The court in *Bruno Appliance* recognized that bait and switch sales tactics particularly fall within the scope of the statutory scheme. A bait and switch occurs when a seller makes

> " '[a]n alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch customers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser.' " *Bruno Appliance*, 62 Ill. App. 3d at 222-23, quoting 16 C.F.R. § 238 (1977).

In *Bruno*, the plaintiff had seen a furniture set consisting of a sofa, love seat and lounge chair advertised for $298. When she went to the store, advertisement in hand, she was told the sofa alone was $298, and she was then urged to purchase different furniture which was not on sale. She did so and paid $462.20 for furniture other than that advertised. The court held that the above allegations stated a claim under section 2. According to the defendant, this case is distinguished from *Bruno Appliance* because the plaintiffs here have not attached the specific advertisement upon which they relied. However, as the plaintiffs point out, they need not allege reliance to proceed under section 2. *Siegel*, 153 Ill. 2d at 542. Rather, they need merely show that the defendant published deceptive advertisements with the intent that they rely on them.

■ Each of the advertisements attached to the complaint clearly states, in a manner which rivets the viewer's attention, variations on the statement "no downpayment." The plaintiffs allege that they relied on these advertisements in deciding to visit the Car Credit Center. However, the plaintiffs also allege that, in fact, the defendant routinely requires downpayments and that they were required to make significant downpayments in purchasing their vehicles. Essentially, the plaintiffs' allegations are that the defendant has advertised goods with an intent not to sell them as advertised. If proved, this constitutes the basis for a claim of deceptive practice under section 2 of the Consumer Fraud Act. *Bruno Appliance*, 62 Ill. App. 3d at 222.

The plaintiffs also allege that the defendant's advertisement offering "easy credit" constitutes a deceptive practice under section 2 in light of (1) the defendant's charging of extremely high interest

rates when it advertises bank rate financing and (2) its rigorous collection procedures, which include wage assignments. In *Tashof v. Federal Trade Comm'n*, 437 F.2d 707 (D.C. Cir. 1970), a case brought under section 5(a) of the Federal Trade Commission Act (15 U.S.C. § 45 (1970)), the court held that the use of the term "easy credit" was misleading when the defendant employed rigorous collection practices. Here, the plaintiffs have alleged that the defendant employs rigorous collection practices, including the routine use of wage assignments and repossession.

The plaintiffs contend that the defendant's advertising of bank rates is (1) untrue, given that their contracts provided for financing at more than 29% and 33%, respectively, while bank rates at the time of the plaintiffs' purchases ranged between 9.5% and 13.5%, and (2) a direct violation of section 2K of the Consumer Fraud Act. Section 2K provides that it is an unlawful practice for any person "engaged in the making of loans to consumers or furnishing goods or services to consumers in a credit transaction [to] advertise using the terms 'bank rates,' 'bank financing' or words of like import unless it is a bank, banking association or trust company authorized to do business under the laws of this State or of the United States." 815 ILCS 505/2K (West 1992). We are unaware of any reported decision interpreting section 2K; however, given its plain language, we agree that the plaintiffs have stated a cause of action based upon the defendant's representations as to the availability of bank rate financing.

The plaintiffs also assert that the defendant engaged in a deceptive practice by offering written guaranties and warranties while routinely selling defective cars and then refusing to honor its warranties. The plaintiffs allege they bought defective cars from the defendant. The defects included transmission failure. The complaint alleges that the defendant refused to honor their warranties. Although these allegations somewhat merge with those contained in the plaintiffs' breach of warranty claims, which are not the subject of this appeal, we will address them insofar as they implicate the deceptive advertising claims.

The print advertisements attached to the complaint state either "1 year warranty available" or that customers can get "12 month, 12,000 mile guarantee." The advertisements do not indicate that the warranties are in any way limited. The defendant's television advertisement announces, "We guarantee your car in writing. One year of partial guarantee 50-50 on parts and labor, motor, transmission and differential."

According to documentation attached to the complaint, the

plaintiff Garcia received only a 30-day warranty. On the other hand, Garner's sales contract indicates she received "a one year 50/50 warranty on motor, transmission and drive shaft, and differential only." However, Garner contends that the defendant refused to repair her transmission although mechanics told her it had worn out. Although, as we have noted, Garner's claim appears to be more one for breach of warranty than deceptive practice we cannot say that, given the allegations of the complaint, it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover on the basis of deceptive advertising as to the availability of written guarantees.

Finally, the plaintiffs contend, with regard to Ms. Garner, that the defendant employed bait and switch tactics by advertising certain cars without any intention of offering the car advertised. The plaintiffs allege that Garner saw 1985 Ford Tempos advertised at a cost of between $2,450 and $2,950. One of the advertisements attached to the complaint offers a 1985 Ford Tempo for $1,495. In fact, according to the complaint, the defendant did not have 1985 Tempos available at these prices. Instead, the defendant offered Garner a 1984 Tempo for $5,995, which is more than twice the price of the advertised cars. She purchased this car. Under *Bruno*, these allegations are sufficient, if proved, to establish that the defendant offered goods with the intent not to sell them as advertised. *Bruno*, 62 Ill. App. 3d at 222.

The plaintiffs also seek to hold the defendant Bass individually liable for his actions as general manager of the Car Credit Center. The complaint alleges that Bass has worked at Car Credit Center for 34 years, although it does not allege how long he has been general manager. The plaintiffs assert Bass "directs and controls the day-to-day activities of Car Credit [Center], including its bookkeeping, service, sales, inventory, credit approval and employee training." Also, "[o]n information and belief [he] approves advertising used by Car Credit [Center]" and is "familiar with all of Car Credit's advertising." He approves virtually all loans and "is aware that the terms of a majority of those loans do not conform with the terms in Car Credit's advertisements and commercials."

The plaintiffs cite numerous Illinois cases in support of their attempt to hold Bass personally liable. All of the individuals held liable in these cases share one characteristic which Bass does not: they are all either corporate executives in charge of directing corporate policy or controlling or primary corporate shareholders. See *People ex rel. Hartigan v. All American Aluminum & Construction Co*, 171 Ill. App. 3d 27, 524 N.E.2d 1067 (1988); *People ex rel. Hartigan v. Dynasty System Corp.*, 128 Ill. App. 3d 874, 471 N.E.2d 236 (1984); *People ex*

*rel. Fahner v. American Buyers Club, Inc.*, 115 Ill. App. 3d 759, 450 N.E.2d 904 (1983).

The plaintiffs also cite federal cases, as well (*Federal Trade Comm'n v. Amy Travel Service, Inc.*, 875 F.2d 564 (7th Cir. 1989); *Guziak v. Federal Trade Comm'n*, 361 F.2d 700 (8th Cir. 1966); *Federal Trade Comm'n v. International Diamond Corp.*, 1983-2 Trade Cas. (CCH) par. 65,506 (N.D. Cal. 1983); *Federal Trade Comm'n v. H.N. Singer, Inc.*, 1982-3 Trade Cas. (CCH) par. 65,011 (N.D. Cal. 1982)), which hold that sales managers may be held liable for their participation in consumer fraud, arguing that we should consider them pursuant to the directive in section 2 that we consider decisions of the federal courts relating to section 5(a) of the Federal Trade Commission Act. However, that directive pertains only to section 2, which defines unlawful and deceptive practices. Section 10(a) of the Consumer Fraud Act, which grants private rights of action against "any person" who violates the Act, does not refer to the decisions of federal courts. 815 ILCS 505/10(a) (West 1992).

■ As the parties both acknowledge, the general rule in Illinois is that corporate employees are not vicariously liable for *tortious* acts of the corporation in which they do not participate. Under common law, therefore, an employee may be individually liable only if he actively participates in the wrongdoing. *Fure v. Sherman Hospital*, 55 Ill. App. 3d 572, 371 N.E.2d 143 (1977). The Consumer Fraud Act, however, confers a statutory right of action created by the legislature. *Martin v. Heinhold Commodities, Inc.*, 163 Ill. 2d 33, 643 N.E.2d 734 (1994). Section 10(a) of the Consumer Fraud Act states that those damaged by violations of the Act may sue "any person" who violates the Act. Section 1(c) of the Act includes corporations and the salesmen and employees who work for these corporations within the definition of the term "person." 815 ILCS 505/1(c) (West 1992). Given this definition, we must determine whether the plaintiffs have properly pleaded a cause of action against Bass under section 2.

■ The defendant argues that the plaintiffs have failed to allege that Bass participated in either of the plaintiff's purchases. However, the plaintiffs allege Bass' active participation in the defendant's deceptive advertising. The plaintiffs allege that Bass had authority to approve Car Credit Center's advertisements and did so despite his knowledge that Car Credit Center did not enter into sales and loans on the terms advertised. He knew this because he allegedly approved almost all of the loans. We believe these allegations sufficient, if proved, to establish Bass' direct participation in the defendant's deceptive practice of advertising goods with the intent not to sell them as advertised. Therefore, the trial judge erred in dismissing him as a party defendant.

For the foregoing reasons, the judgment is reversed and this case is remanded for further proceedings.

Reversed and remanded.

McNAMARA and RAKOWSKI, JJ., concur.