KETURAH D. CHANDLER *et al.*, Plaintiffs-Appellants, v. AMERICAN GENERAL FINANCE, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—01—2789

Opinion filed March 27, 2002.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Danita V. Ivory, all of Edelman, Combs & Latturner, L.L.C., of Chicago, for appellants.

Craig A. Varga and Paulette J. Cusick, both of Varga Berger Ledsky Hayes & Casey, of Chicago, for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

Keturah D. Chandler and Robert A. Chandler (the Chandlers) borrowed money from American General Finance, Inc. (AGFI), on June 1, 1998. After the Chandlers made some payments, AGFI began bombarding them with opportunities to borrow more money. They finally succumbed, on September 15, 1999.

In their lawsuit, the Chandlers claim they were victims of a bait-and-switch scheme. That is, AGFI led them to believe they would be getting a new loan but intended only to refinance their existing loan. Refinancing, they say, turns out to be more expensive than taking out a new loan.

The Chandlers brought this consumer class action under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1998)) and the Illinois Consumer Installment Loan Act (Consumer Loan Act) (205 ILCS 670/18 (West 1998)).

AGFI filed a motion to dismiss, contending: (1) the Chandlers failed to state a cause of action under the Consumer Fraud Act; (2) the Chandlers failed to state a cause of action under the Consumer

Loan Act; and (3) AGFI's conduct complied with the requirements of the federal Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (1994)), thus ruling out the Chandlers' state law claims.

The trial court dismissed the second amended complaint without opinion. On appeal, the Chandlers contend the trial court erred in dismissing their second amended complaint. We agree.

We reverse the trial court's order and remand this case for further proceedings.

## FACTS

Because the trial court dismissed the Chandlers' second amended complaint after AGFI brought a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)), we take the facts from the Chandlers' second amended complaint, and the exhibits attached to it, and accept them as true for the purpose of this appeal.

On June 1, 1998, the Chandlers received a loan from AGFI. The amount financed was $5,524.16. The Chandlers' automobile secured the note. The finance charge was $2,105.53 and the annual percentage rate was 21.30%.

Of the amount financed, $109.91 was the premium for credit life insurance and $276.85 was the premium for credit disability insurance. Under the terms of the note, in the event of prepayment or acceleration, finance charges would be credited using the "Rule of 78's." A refund of unearned premiums on the insurance policies would also be computed using the Rule of 78's.

After the Chandlers received the June 1, 1998, loan, AGFI began soliciting them to borrow additional money. Specifically, AGFI placed advertisements directly on the Chandlers' account statements and sent advertisement letters to them. The various solicitations on their account statements were standard form letters used by AGFI to solicit borrowers to borrow more money.

The Chandlers say AGFI's advertisements are "deceptive and misleading, in that *** they purport to be an offer for an additional loan" and "they do not disclose that the borrower will refinance his or her existing obligation." The various solicitations on the Chandlers' account statements stated:

> "SPLASH INTO CASH DURING OUR SUMMER CELEBRATION. WHATEVER YOUR PLANS ... LET US HELP. WITH A HOME EQUITY LOAN YOU CAN HAVE THE CASH YOU NEED FOR A REALLY COOL SUMMER. COME IN ANYTIME FROM JULY 13 TO AUGUST 7 AND REGISTER TO WIN YOUR OWN DELUXE BEACH KIT. ALL LOANS SUBJECT TO OUR NORMAL CREDIT POLICIES."

"YOU COULD PAY OFF MONTHLY BILLS, TAKE CARE OF BACK-TO-SCHOOL EXPENSES AND STILL HAVE EXTRA CASH. WE'LL SHOW YOU HOW TO PUT YOUR HOME EQUITY TO WORK."

"IF YOU'RE PLANNING ON HOME IMPROVEMENTS TO MAKE YOUR HOME MORE COMFORTABLE THIS SUMMER ... WE'LL BE HAPPY TO TELL YOU ABOUT THE BENEFITS OF A HOME EQUITY LOAN."

"DON'T LET THE SUMMER SLIP AWAY WITHOUT A VACATION YOU'LL REMEMBER FOR YEARS TO COME. ASK US HOW WE CAN HELP YOU GET AWAY THIS SUMMER."

"YOU'RE INVITED TO STOP BY AND COOL OFF WITH COLD CASH FROM JULY 19-AUGUST 13. WE'RE SERVING UP A SUPPLY OF COLD CASH FOR VACATIONS, HOME IMPROVEMENTS OR BACK-TO-SCHOOL EXPENSES. CALL *** TODAY TO SEE HOW MUCH WE CAN PUT 'ON ICE' FOR YOU."

The advertisement letters AGFI sent to the Chandlers are, in essence, the same as the solicitations in their account statements, except that the letters are a bit more personal. For example, in a letter dated September 7, 1999, AGFI said,

"Dear Keturah,

I am pleased to tell you that your loan account balance has been reduced enough that you may qualify for $1,200.*

Please call me at *** and I'll do all I can to meet your requirements for new appliances, home improvements, vacation spending, or other needs."

The Chandlers responded to AGFI's solicitations. Keturah Chandler called AGFI and asked about receiving an additional loan. A representative of AGFI gave Keturah the impression she would receive a "new" loan. The representative allegedly "never mentioned the Chandlers' current loan in relation to the additional money sought to be borrowed." All the representative mentioned was that Keturah "could come after-hours to sign the loan documents" and "that all that would be necessary was her signature."

On September 15, 1999, the Chandlers signed a new note with AGFI. "Instead of simply making a new loan," said the amended complaint, "AGFI presented the Chandlers with papers for a refinancing of the existing loan with additional funds being advanced. *** AGFI failed to disclose that it would be far more expensive for the Chandlers to refinance than to simply obtain a new loan."

Now, the amount financed was $5,388.82, the finance charge was $2,026.75, and the annual percentage rate was 21.33%—the Chandlers' automobile still secured the note. Of the amount financed, $107.23 was the premium for credit life insurance and $439.56 was the

premium for credit disability insurance. Under terms of the note, in the event of prepayment or acceleration, finance charges would be credited using the "Rule of 78's." A refund of unearned premiums on the insurance policies would also be computed using the Rule of 78's.

The Chandlers alleged: "AGFI did not disclose to the Chandlers, when they entered into the September 15, 1999, transaction, that it would be substantially cheaper for them to simply obtain a second loan instead of refinancing the first loan."

The Chandlers say they did not realize AGFI had refinanced their original loan until the following day, September 16, 1999, when they told AGFI they wanted a "new loan." AGFI told the Chandlers they could not receive a new loan unless they returned the original check. The Chandlers were unable to return the check, however, because they had cashed it the night before. Consequently, AGFI denied the Chandlers' request to convert the additional loan money into a new loan.

The Chandlers set out the complained-of policies and practices of AGFI they say violated the Consumer Fraud Act and the Consumer Loan Act. They allege:

"It was and is the policy and practice of AGFI to:

a. Repeatedly solicit for existing loans customers by mail to borrow additional funds.

b. Use advertisements, such as Exhibits C & D, which lead the customer to believe that he or she is being offered a new and separate loan when in fact, that is not the case.

c. Provide existing loan customers with additional funds through refinancing the original loans, rather than making new loans, with the result that the cost of the additional funds was inordinately and unconscionably expensive.

d. Concealing from or omitting to reveal to the borrowers the fact that the advertisement was for a refinancing of the existing loan.

e. Concealing from or omitting to reveal to the borrowers the fact that the cost of obtaining additional funds through refinancing was immensely greater than the cost of obtaining an additional loan.

f. Market loans to mostly working-class borrowers who generally do not understand the computations necessary to determine the comparative costs of a new and separate loan and refinancing."

## DECISION

### STANDARD OF REVIEW

■ A section 2—615 motion to dismiss attacks the legal sufficiency of a complaint. *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 710 N.E.2d 798 (1999). In ruling on the motion, the trial court must accept as true all

well-pled facts in the complaint and all reasonable inferences that may be drawn from the facts. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 490, 675 N.E.2d 584 (1996).

The question for us to resolve is whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475, 575 N.E.2d 548 (1991). A cause of action will not be dismissed on the pleadings unless it clearly appears no set of facts can be proved which will entitle the plaintiff to recover. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87, 672 N.E.2d 1207 (1996). Our review is *de novo. Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997).

## THE CONSUMER FRAUD ACT CLAIM

■ Section 2 of the Consumer Fraud Act:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, \*\*\* in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1996).

■ Any person who suffers actual damage as a result of a violation of the Consumer Fraud Act may bring an action against the person who committed the violation. 815 ILCS 505/10a(a) (West 1996).

■ We construe the Consumer Fraud Act liberally to give effect to the legislative goals behind its enactment. *Oliveira v. Amoco Oil Co.*, 311 Ill. App. 3d 886, 892, 726 N.E.2d 51 (2000). One of those goals is to give protection broader than afforded by common law fraud. *Oliveira*, 311 Ill. App. 3d at 892, citing 815 ILCS 505/2 (West 1996).

Although the standard of proof for a violation of the Act is lenient, because it does not require "any person has in fact been misled, deceived or damaged thereby" (815 ILCS 505/2 (West 1996)), a complaint alleging a violation of the Consumer Fraud Act must be pled with the same particularity and specificity as that required under common law fraud. *Oliveira*, 311 Ill. App. 3d at 892.

■ A cause of action under section 2 of the Consumer Fraud Act has three elements:

(1) a deceptive act or practice by the defendant,

(2) the defendant's intent that plaintiff rely on the deception, and

(3) the deception occurred during a course of conduct involving trade or commerce. *Zekman v. Direct American Marketers, Inc.*, 182

Ill. 2d 359, 373, 695 N.E.2d 853 (1998); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584 (1996). The Consumer Fraud Act does not require actual reliance by the plaintiff on a defendant's deceptive act or practice. *Connick*, 174 Ill. 2d at 501.

The Chandlers key their Consumer Fraud Act claim to the advertisements in exhibit C and D attached to their second amended complaint and to AGFI's "POLICIES AND PRACTICES." Specifically, the Chandlers contend AGFI's policy and practice of "offering plaintiffs a new loan and home equity loan" through its advertisements/solicitations was fraudulent because (1) material facts were actively concealed, (2) material facts were omitted, and (3) ambiguous statements or half-truths were made.

■ Our supreme court has said: "An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. [Citations.] A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase. [Citation.] Furthermore, it is unnecessary to plead a common law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment. [Citation.]" *Connick*, 174 Ill. 2d at 504-05.

The Chandlers contend the omitted material fact, which, if known, would have caused them to act differently is that AGFI's advertisements actually were for the refinancing of their existing loan, that AGFI never intended to provide a new loan, and that "the cost of obtaining additional funds through refinancing was immensely greater than the cost of obtaining an additional loan."

In support of their contention, they cite *Emery v. American General Finance, Inc.*, 71 F.3d 1343 (7th Cir. 1995), and *Parish v. Beneficial Illinois, Inc.*, No. 94 C 4156 (N.D. Ill. April 10, 1996).

*Emery* was a Racketeer Influenced and Corrupt Organizations Act (RICO) claim (18 U.S.C. § 1694 (1994)), based on mail fraud. Verna Emery borrowed money from American General Finance (AGF), and was making her payments on time. After about six months, AGF wrote her and told her it had more money for her if she wanted it. The letter said:

> "Dear Verna:
>
> I have extra spending money for you.
>
> Does your car need a tune-up? Want to take a trip? Or, do you just want to pay off some of your bills? We can lend you money for whatever you need or want.
>
> *You're a good customer. To thank you for your business, I've set aside $750.00\* in your name.*

Just bring the coupon below into my office and if you qualify, we could write your check on the spot. Or, call ahead and I'll have the check waiting for you.

Make this month great with extra cash. *Call me today—I have money to loan.*

*Subject to our normal credit policies." (Emphasis added.) *Emery*, 71 F.3d at 1345.

At the bottom of the letter was a coupon captioned, " '$750.00 Cash Coupon' " made out to her at her address. The small print explained, " 'This is not a check.' " *Emery*, 71 F.3d at 1345. Verna Emery wanted more money, and AGF refinanced her loan.

AGF increased her monthly payment from $89.47 to $108.20 and gave her a check for $200, besides paying off her original loan. The cost to her came to about $1,200 paid over 3 years for the right to borrow $200. If she had taken out a new loan rather than refinancing her old one, it would have cost her roughly one-third less, which AGF did not disclose.

According to the court, the letter sent to Emery made it appear AGF was offering a new loan. However, only after she went to AGF's office did Emery find out she was refinancing an old loan.

*Emery* does not hold refinancing, standing alone, is fraud:

"We do not hold that 'loan flipping' is fraud, because the boundaries of the term are obscure. We do not hold that American General Finance engaged in fraud, or even in 'loan flipping.' We do not hold that the mail fraud statute criminalizes sleazy sales tactics, which abound in a free commercial society." *Emery*, 71 F.3d at 1348.

*Emery* does hold, however, the allegations of fraud in the plaintiff's complaint are sufficient to withstand a motion to dismiss for failure to state a claim under the mail fraud statute. *Emery*, 71 F.3d at 1348. Which allegations? Those that imply "the customer is being offered a separate loan, when the customer shows up to take advantage of the offer the company presents him with papers for refinancing the customer's existing loan with additional funds being advanced and does not disclose, indeed conceals the fact, that this method of obtaining additional funds is much more costly than taking out a new loan." *Emery*, 71 F.3d at 1346. That description fits the allegations in the Chandlers' amended complaint.

On remand, the district court twice dismissed the action because the plaintiff was unable to comply with the intricacies of RICO pleading. That is, the plaintiff could not plead two specific acts of mail fraud; nor could she plead a pattern of racketeering activity by separate entities. See *Emery v. American General Finance Inc.*, 938 F. Supp.

495 (N.D. Ill. 1996); *Emery v. American General Finance Inc.*, 952 F. Supp. 602 (N.D. Ill. 1996). The Court of Appeals affirmed the dismissal, leaving untouched and confirming its prior holding that the mailing similar to the letters in this case "was sufficiently misleading to make out, in conjunction with the allegations of the complaint, a violation of the mail fraud statute." *Emery v. American General Finance Co.*, 134 F.3d 1321, 1322 (7th Cir. 1998).

*Parish*, which is factually similar to *Emery*, relied on *Emery* in holding the plaintiffs adequately alleged the elements of a claim under the Illinois Consumer Fraud Act.

In *Parish*, the plaintiffs alleged the defendant Beneficial Illinois was in the practice of defrauding unsophisticated consumers through a "loan-flipping" scheme. The Parishes described this scheme:

> "A consumer takes out an initial loan with Beneficial Illinois and begins making timely payments as dictated by the original loan documents. After some unspecified period of time, the consumer receives a letter from Beneficial Illinois offering additional money. The letter states that the consumer is a 'great' customer in 'good standing,' and invites him or her to come in and receive additional funds. When the consumer arrives at Defendant's place of business and tenders the letter, Beneficial Illinois employees refinance the existing loan and reissue certain insurance policies incidental to it. Beneficial Illinois does not inform its customers that the cost of refinancing their loans is much greater than would be the cost of taking out a second loan or extending credit under the current loan." *Parish*, slip op. at ___.

The Parishes alleged in detail two separate occasions on which they accepted Beneficial Illinois' offer of additional cash.

After describing a "deceptive act or practice" under the Consumer Fraud Act, the court held:

> "This court is satisfied that the loan-flipping scheme alleged by Plaintiffs falls into this broad description. Reading the allegations in the complaint in the light most favorable to Plaintiffs, Beneficial Illinois sent letters to a class of unsophisticated borrowers hoping to trick them into an outrageous refinancing that no knowledgeable consumer would accept. In *Emery*, Judge Posner did not hesitate to characterize the selfsame activity as fraud. 71 F.3d at 1347. Thus, Plaintiffs have alleged with adequacy the elements of a claim under the [Consumer Fraud Act]." Slip op. at ___.

We recognize a refusal to offer a separate new loan instead of a refinanced loan, even where the separate loan would cost the borrower significantly less, does not, by itself, constitute a scheme to defraud. See *Emery*, 71 F.3d at 1348. But we do not read the Chandlers' complaint to say offering the refinanced loan constituted the scheme.

Rather, the complaint alleges that in the course of soliciting the Chandlers and providing the refinancing, the defendant neglected to say (1) it was offering to refinance the existing loan with a larger loan rather than provide a separate loan; (2) the refinancing would be considerably more expensive than providing a separate loan; and (3) it never intended to provide a new loan of any kind.

AGFI contends the complaint never alleges any specific falsehoods or misleading half-truths by AGFI. It notes that, outside of the attachments, the complaint merely alleges AGFI solicited its customers to borrow more money. With regard to the attachments, AGFI contends their express words reveal nothing false or misleading. It argues that, in fact, the entire complaint fails to point to a single misleading phrase.

We believe *Emery* and *Parish* support a finding the Chandlers' second amended complaint states a claim for consumer fraud.

The financial sophistication of a borrower can be critically important. *Emery* found lack of sophistication relevant where the scheme revolved around the plaintiff's ability to access and understand financial disclosures under TILA. See *Emery*, 71 F.3d at 1347.

The misstatements, omissions, and half-truths the Chandlers refer to are contained in the advertisements and letters sent to their home by AGFI. The mailings contain repeated references to a "home equity loan," which, allegedly, never was on the table. AGFI's images of a home equity loan, along with its invitations to "splash into cash" and to "stop by and cool off with cold cash," could be read as an offer of a new loan—the bait—intended to induce a false belief by the Chandlers. Refinancing of the existing loan could be seen as the switch. Whether the facts will support the allegations is something we cannot determine at this time.

■ Illinois courts have consistently held an advertisement is deceptive "if it creates the likelihood of deception or has the capacity to deceive." *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App. 3d 843, 857, 575 N.E.2d 1378 (1991); *Williams v. Bruno Appliance & Furniture Mart, Inc.*, 62 Ill. App. 3d 219, 222, 379 N.E.2d 52 (1978). A plaintiff states a claim for relief under section 2 the Consumer Fraud Act if a trier of fact could reasonably determine that a "defendant had advertised goods with the intent not to sell them as advertised," that is, a bait-and-switch. *Bruno Appliance*, 62 Ill. App. 3d at 222.

The Chandlers' core allegation is AGFI engaged in "bait and switch" advertising. *Bruno Appliance* recognized that bait-and-switch sales tactics fall within the scope of the Consumer Fraud Act: bait-and-switch occurs when a seller makes " 'an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch customers from buying

the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser.'" *Bruno Appliance*, 62 Ill. App. 3d at 222-23, quoting 16 C.F.R. § 238 (1977).

In *Bruno Appliance*, the plaintiff had seen a furniture set consisting of a sofa, love seat, and lounge chair advertised for $298. When she went to the store, advertisement in hand, she was told the sofa alone was $298, and she was then urged to purchase different furniture which was not on sale. She did so and paid $462.20 for furniture other than that advertised. The likelihood of deception or the capacity to deceive was enough to find an advertisement deceptive on its face. The court held the allegations stated a claim under section 2 of the Consumer Fraud Act. *Bruno Appliance*, 62 Ill. App. 3d at 222.

In *Garcia v. Overland Bond & Investment Co.*, 282 Ill. App. 3d 486, 489, 668 N.E.2d 199 (1996), the defendant's advertisements included statements such as "NO MONEY DOWN," "NO DOWN PAYMENT," "EASY CREDIT," and "INSTANT CREDIT" and offered written guarantees and warranties.

The plaintiffs alleged the advertisements "target unsophisticated, low-income buyers such as, inferentially, themselves." They alleged that after visiting the Car Credit Center in response to the various advertisements, they were induced to (1) make a down payment; (2) enter into retail installment agreement that required them to pay interest at a very high annual percentage rate, *e.g.*, 33.11%; and (3) sign a bill of sale offering them "easy credit" and assuring them they could return the vehicle if they did not like it. *Garcia*, 282 Ill. App. 3d at 489-90.

After discovering various mechanical defects—"defects of such magnitude the Car Credit Center should have known about them"—the plaintiffs returned their cars and asked for a replacement or refund. The Car Credit Center refused to take the car back, "on the pretense that the engine worked properly." *Garcia*, 282 Ill. App. 3d at 490.

The court held, if proved, the plaintiffs' allegations that the defendant advertised goods with an intent not to sell them as advertised constituted a basis for a claim of deceptive business practice under the Consumer Fraud Act. *Garcia*, 282 Ill. App. 3d at 492-93.

There is a common thread running through the allegations in this case and the cases we have cited—*Emery, Parish, Bruno Appliance*, and *Garcia*. In each, the targets are unsophisticated customers, attractive solicitations are aimed at them as a way of getting them in, the solicitor has no intention of delivering on the apparent promises, and, once there is contact, something different is delivered, something that is more costly.

We conclude the Chandlers allege fraud under the Consumer Fraud Act and the Consumer Loan Act. But even if they do, contends AGFI, there can be no cause of action because the Chandlers do not allege any actual injury arising from the alleged deception.

■ Although the defendant's intent that its deception be relied on is an element, no actual reliance is required to state a cause of action under the Consumer Fraud Act. *Connick*, 174 Ill. 2d at 501. A plaintiff must demonstrate, however, the defendant's consumer fraud proximately caused his injuries. *Zekman*, 182 Ill. 2d at 373; *Connick*, 174 Ill. 2d at 501. The required allegation of proximate causation is minimal, because that determination is best left to the trier of fact. *Connick*, 174 Ill. 2d at 504.

■ The Chandlers contend their transaction resulted in extra costs that were effectively concealed by the defendant. They say a separate loan on the same terms would have cost them substantially less. The Chandlers assert that had this information been provided, they would not have entered into this transaction on the given terms.

Actual dollars lost by the Chandlers is a matter of proof, not pleading. See *Miller v. William Chevrolet/Geo, Inc.*, 326 Ill. App. 3d 642, 654, 762 N.E.2d 1 (2001) (pleading value of car was diminished is sufficient). If AGFI wishes to present evidence the Chandlers would have accepted the refinancing on AGFI's terms anyway, it can do so at later stages of this case. See *Downers Grove Volkswagen, Inc., v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 529-30, 546 N.E.2d 33 (1989).

We realize the total cost of the refinancing could not have been concealed: the loan documents made clear the monthly payments, the amount considered, the finance charge, and the insurance premiums. However, the Chandlers' Consumer Fraud Act claim does not assert they were unaware of the total amount they owed under the loan. Rather, they say their lack of financial sophistication prevented them from appreciating the inordinate cost of the refinancing. Enough actual damage caused by the deception is alleged to defeat the section 2—615 motion to dismiss.

## THE CONSUMER LOAN ACT CLAIM

Count I of the Chandlers' second amended complaint alleges AGFI violated the Consumer Loan Act. The trial court dismissed that count.

AGFI contends the trial court was correct in dismissing that count because the Chandlers failed to allege "how the advertisement(s) at issue here were 'false,' 'misleading,' or 'deceptive,' " and because AGFI's loan documents complied with TILA's disclosure requirements and, thus, cannot be a violation of the Consumer Loan Act.

■ The Consumer Loan Act says, "Advertising for loans trans-

acted under this Act may not be false, misleading or deceptive." 205 ILCS 670/18 (West 1998). An advertisement is deceptive "if it creates the likelihood of deception or has the capacity to deceive." *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App. 3d 843, 857, 575 N.E.2d 1378 (1991); *Williams v. Bruno Appliance & Furniture Mart, Inc.*, 62 Ill. App. 3d 219, 222, 379 N.E.2d 52 (1978).

■ Consistent with our finding under the Consumer Fraud Act, we hold the Chandlers stated a claim for relief under section 18 of the Consumer Loan Act because a trier of fact could reasonably determine that AGFI "had advertised goods with the intent not to sell them as advertised." *Bruno Appliance*, 62 Ill. App. 3d at 222.

## THE TILA DEFENSE

AGFI contends its compliance with federal and state disclosure requirements is a complete defense to the Chandlers' state-law claims. In support of its contention, AGFI cites *Lanier v. Associates Fiance, Inc.*, 114 Ill. 2d 1, 499 N.E.2d 440 (1968), *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 713 N.E.2d 543 (1999), and *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 755 N.E.2d 462 (2001).

■ There is no question compliance with TILA, the federal act, precludes liability under the Consumer Fraud Act where the alleged fraud has something to do with disclosure in the loan documents.

In *Lanier*, the plaintiff contended the finance company's use of the Rule of 78's to compute interest in loans, to unsophisticated borrowers, absent an explanation about the effects of the rule on early repayment, was a common law fraud and violated the Consumer Fraud Act.

In *Weatherman*, the borrower contended the lender violated the Consumer Fraud Act when it provided, at the time of the loan application, a gross estimate of certain fees and costs but failed to inform the borrower of specific fees for recording the mortgage assignment after closing. *Weatherman*, 186 Ill. 2d at 478.

And in *Jackson*, the car buyer claimed the finance company assignee violated the Consumer Fraud Act where the loan documents falsely stated the amount of money paid to the assignee of the dealer for an extended warranty.

In each case, the defendant had complied with the federal disclosure acts—TILA in *Lanier* and *Jackson*, the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. § 2601 *et seq.* (1994)) in *Weatherman*. In each case, the supreme court held compliance with federal disclosure requirements was a bar to liability under the Consumer Fraud Act.

Here, the Chandlers agree AGFI complied with TILA. But that

compliance is not enough to defeat the Chandlers' Consumer Fraud Act and Consumer Loan Act claims.

The frauds alleged in *Lanier*, *Weatherman*, and *Jackson* centered on the actual loan transactions and the contents of the loan documents. For example, in *Lanier*:

> "[W]e believe that the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure *in the plaintiff's loan agreement* than the disclosure required by the comprehensive provisions of the Truth in Lending Act." (Emphasis added.) *Lanier*, 114 Ill. 2d at 17.

The bait-and-switch fraud alleged by the Chandlers extends beyond the loan agreement papers. It has nothing to do with the contents or omissions in the loan agreement papers. The fraud, if there was one, concerned AGFI's deceptive enticement of the Chandlers—false promises with no intent to deliver. TILA does not reach that kind of fraud.

In *Jackson*, the supreme court held:

> "We also agree with the appellate court that application of *Lanier* to this case does not confer a blanket immunization of assignees from liability under the Consumer Fraud Act. A plaintiff would be entitled to maintain a cause of action under the Consumer Fraud Act where the assignee's fraud is active and direct." *Jackson*, 197 Ill. 2d at 51-52.

The Chandlers have alleged an active and direct fraud, independent of and separate from the TILA exemption. Count I and count II are sufficient to withstand AGFI's motion to dismiss.

## CONCLUSION

For the reasons stated, we reverse the trial court's order dismissing count I and count II of plaintiffs' second amended complaint and we remand this case to the trial court for further proceedings.

Reversed and remanded.

CERDA and SOUTH, JJ., concur.